IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| REACH Community Development, *et al.*,<br><br>        *Plaintiffs-Appellees,*<br><br>    *v.*<br><br>U.S. Department of Homeland Security, *et al.*,<br>        *Defendants-Appellants.* | No. 26-1575<br><br>(D. Or. No. 3:25-cv-2257-AB) |

**OPPOSITION TO MOTION FOR ADMINISTRATIVE STAY**

Plaintiffs respectfully submit this brief opposition to the government's request for an administrative stay. Plaintiffs will respond in full to the government's motion for a stay pending appeal within the time permitted by the Court's rules.

This case concerns the Department of Homeland Security's repeated use of tear gas and other chemical munitions—many dozens of times over an 8-month period—next to an affordable housing complex in Portland, Oregon. That complex, known as Gray's Landing, is located less than 100 feet from the Portland ICE facility. As the district court found following an evidentiary hearing, the federal government has consistently used tear gas and other chemical munitions in response to minimal or no threats from protests, in

1

such large quantities that the toxic chemicals regularly infiltrate this neighboring housing complex, sickening residents in their own homes. On many occasions, DHS officers have saturated the entire city block surrounding Gray's Landing with tear gas, and officers have even shot tear gas and pepperball projectiles from the roof of the ICE facility that have hit apartments at Gray's Landing, landed on balconies, or fallen into the complex's courtyard. *See* PI Op. at 9–25 (Dkt. 75).

Plaintiffs include residents of Gray's Landing who have suffered grievous physical and psychological injuries from this conduct. *See id.* at 49–51. They include small children who repeatedly had to go to urgent care, Dkt. 46-9 at ¶ 7, and one who now needs to use inhalers to breathe and medications to treat allergic reactions and anxiety, PI Op. at 50; Dkt. 46-11 at ¶¶ 11–12. They include residents with pre-existing conditions that the tear gas has significantly worsened, such as Cushing's disease, muscular dystrophy, and mast cell activation syndrome. PI Op. at 6–7, 50; Dkt. 46-11 at ¶¶ 4–6; Dkt. 46-12 at ¶¶ 4, 13, 14; Dkt. 46-12 at ¶ 6. They include elderly veterans and domestic violence survivors for whom the chemical munitions have triggered intense PTSD episodes. PI Op. at 6; Dkt. 46-2 at ¶¶ 9–12, Dkt. 46-4 at ¶¶ 20–23; Dkt. 46-6 at ¶¶ 3, 7. Because of the tear gas repeatedly

2

invading their homes and bodies, Plaintiffs have regularly had to sleep with gas masks on, PI Op. at 34, Dkt. 46-2 at ¶ 12, or in bathtubs and closets, PI Op. at 35 n.21; Dkt. 46-6 at ¶¶ 11–12; Dkt. 46-9 at ¶ 7, and one Plaintiff now needs to have an adrenal gland removed due to the government's conduct, PI Op. at 50; Dkt. 46-12 ¶¶ 4, 13, 14. Shockingly, the government has continued to engage in this conduct with abandon, in response to little or no threats, despite knowing of the harmful effects on Plaintiffs and other residents of the complex.

Eleven days ago, following an evidentiary hearing and after "review[ing] hundreds of pages of incident reports documenting [the government's] use of force over the past eight months," the district court found that Plaintiffs are likely to succeed on a Fifth Amendment substantive due process claim. PI Op. at 42. Specifically, the court held that Defendants acted with deliberate indifference to the known risk of harm caused by deploying chemical munitions in massive quantities that predictably infiltrate a residential building, in the face of repeated notice, and contrary to the guidance in DHS's own use-of-force policies. *Id.* at 42–48. The court entered a narrowly tailored preliminary injunction prohibiting DHS officers from deploying chemical munitions in quantities likely to infiltrate Plaintiffs'

apartments, unless necessary to address an imminent threat to life. *See id.* at 57.

Ten days after the court entered its injunction, the government filed its notice of appeal and motion for a stay pending appeal and an immediate administrative stay. A stay pending appeal is unwarranted for reasons Plaintiffs will explain in full in responding to Defendants' motion.

But for purposes of the government's immediate request for an administrative stay, Plaintiffs alert this Court to a fact that the government inexplicably fails to disclose in its motion: the government is independently bound by a different injunction in a different case that separately prohibits almost all uses of chemical munitions relevant here. *See* Order of Preliminary Injunction, *Dickinson v. Trump*, No. 3:25-cv-2170-SI (D. Or.) (attached as Exhibit A). The government has not, as of this filing, appealed that injunction, so entry of an administrative stay in this appeal would provide the government little to no relief at all. This fact alone refutes the government's argument that an immediate administrative stay of the injunction below here is necessary to prevent irreparable harm to the government in constraining DHS officers' ability to use chemical munitions outside the Portland ICE facility.

Three days after the district court entered the preliminary injunction now on appeal, a different district judge entered a preliminary injunction in *Dickinson v. Trump*, following a three-day evidentiary hearing. *Dickinson* is a class action brought by nonviolent protesters and journalists who allege that DHS officers have engaged in a pattern of excessive force and First Amendment retaliation at the same Portland ICE facility.

The *Dickinson* injunction restrains the same government defendants at the same facility, but it is materially broader: it prohibits the government from directing or using chemical or projectile munitions at or in the vicinity of the Portland ICE facility "unless the specific target of such a weapon or device poses an imminent threat of physical harm to a law enforcement officer or other person." Order of Prelim. Injunction at 2, *Dickinson*, No. 3:25-cv-2170-SI, ECF No. 156; *see also* Op. & Order, *Dickinson*, No. 3:25-cv-2170-SI, ECF No. 155 (attached as Exhibit B). Unlike the injunction in this case, the *Dickinson* order is not limited to deployments that may reach a particular location—it categorically restricts the use of chemical and projectile munitions at the facility unless directed at an individual posing an imminent physical threat.

The government's motion for extraordinary relief does not mention *Dickinson*. Not once. That is an extraordinary omission. The *Dickinson* injunction is an obviously material fact bearing on whether an administrative stay is warranted, because it means that staying the injunction in this case would give the government little to no relief whatsoever.

An administrative stay is not available to the government as a matter of course. *See Nken v. Holder*, 556 U.S. 418, 427 (2009). At a minimum, the government must demonstrate actual and imminent irreparable harm during the brief period needed to resolve the stay motion. *See id.* at 434. "[I]f the [movant] has not made a certain threshold showing regarding irreparable harm … then a stay may not issue, regardless of the [movant's] proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011).

The government has not met its burden. Indeed, the government's claim of irreparable harm is refuted by its own conduct. Before filing its motion in this Court, the government operated under materially similar constraints for 38 days—first under a TRO in *Dickinson* for 28 days, and then under the preliminary injunction in this case for an additional 10 days— "without problem or prejudice, let alone irreparable harm." Op. & Order at

6

33–34, *Dickinson*, No. 3:25-cv-2170-SI, ECF No. 155. The government's motion does not identify a single instance during that period in which the TRO or the preliminary injunction prevented officers from responding to a threat, compromised officer safety, or impaired operations at the Portland ICE facility in any way. That silence is telling: the government asks this Court to find irreparable harm as a matter of abstract principle while the actual record of compliance—which the government fails to disclose—demonstrates no harm at all.

Finally, compliance with the district court's order is not onerous. As the court below and the *Dickinson* court both observed, the overlapping injunctions in these cases are aligned with the government's own use-of-force policies, which advise against deploying large-scale chemical munitions in precisely these circumstances. *See* PI Op. at 43 ("Defendants' deployment of large-scale chemical munitions runs *contrary to the advice in the agency manuals* to avoid use in certain circumstances." (emphasis in original)); Op. & Order at 33, *Dickinson*, No. 3:25-cv-2170-SI, ECF No. 155 ("[T]he injunction largely mirrors the requirements imposed by FPS's own Use-of-Force policies.").

Plaintiffs will respond in full to the government's motion for a stay pending appeal within the time permitted by the Court's rules. But, for now, the Court should deny the government's request for an administrative stay.

## CONCLUSION

The Court should deny the government's request for an administrative stay.

Respectfully submitted,

/s/Stephen K. Wirth

Stephen K. Wirth
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Telephone: +1 301-823-1148
Stephen@jacobsonlawyersgroup.com

*Counsel for Plaintiffs-Appellees*

March 17, 2026

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,419 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in 14-point Century font, a proportionally spaced typeface.

/s/Stephen K. Wirth
Stephen K. Wirth