IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| REACH Community Development, *et al.*,<br><br>        *Plaintiffs-Appellees*,<br><br>        *v.*<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>        *Defendants-Appellants.* | No. 26-1575<br><br>(D. Or. No. 3:25-cv-2257-AB) |

**PLAINTIFFS' EMERGENCY MOTION FOR RECONSIDERATION
AND RECONSIDERATION EN BANC OF ADMINISTRATIVE STAY**

**(EMERGENCY MOTION UNDER CIRCUIT RULE 27-3:
RELIEF REQUESTED BY MARCH 28, 2026 AT 10:00 A.M.)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................ii

RULE 40 STATEMENT ........................................................................1

INTRODUCTION...................................................................................3

BACKGROUND ....................................................................................6

ARGUMENT ......................................................................................14

I. The Administrative Stay Contradicts this Court's Precedents on the Standard for an Administrative Stay ........................................14

II. This Matter Is of Exceptional Importance ................................18

III. The Court Should Enter Other Appropriate Relief ..................19

CONCLUSION....................................................................................20

FORM 16 CERTIFICATE FOR EMERGENCY MOTION

FORM 11 CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ...............................................................2, 5, 13

*Index Newspapers LLC v. U.S. Marshals Service*,
   977 F.3d 817 (9th Cir. 2020) ................................................................................2

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ................................................................................2

*Scott v. Smith*,
   109 F.4th 1215 (9th Cir. 2024) .........................................................................11

**Rules**

Federal Rule of Appellate Procedure 40(b)(2) ...........................................1, 2, 14

ii

**RULE 40 STATEMENT**

On March 25, 2026, a divided panel (Lee, Tung, JJ.; de Alba, J., dissenting) granted an administrative stay of a preliminary injunction that had prevented federal officers from releasing tear gas next to an affordable-housing complex in Portland, Oregon, as officers had previously done dozens of times over an eight-month period. Plaintiffs are residents of the building who have suffered extreme physical injuries when the toxic chemicals predictably infiltrate their homes and bodies each time officers deploy tear gas when faced with nearby, non-violent protests. One Plaintiff, in particular, recently had an adrenal gland removed because the tear gas exacerbated her Cushing's disease; now post-surgery, further exposure presents potentially fatal risks. The district court granted a tailored preliminary injunction to prevent further harms to these Plaintiffs.

The panel granted an administrative stay without applying this Circuit's governing legal standard, without finding that the government would suffer any harm absent immediate relief, and over a dissent.

Pursuant to Federal Rule of Appellate Procedure 40(b)(2), Plaintiffs-Appellees state that rehearing en banc is warranted for the following reasons:

1

**1.** The panel decision conflicts with this Court's decisions in *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020), *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 824 (9th Cir. 2020), and *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). *See* Fed. R. App. P. 40(b)(2)(A). The panel's order does not apply the governing standard and does not find that the government demonstrated exigency or irreparable harm absent an administrative stay. The panel's unexplained departure from binding circuit authority warrants en banc review, especially given that the government did not even attempt to meet this Court's standards for an administrative stay.

**2.** This proceeding involves a question of exceptional importance. *See* Fed. R. App. P. 40(b)(2)(D). This case involves the first known instance in which the federal government has ever deployed tear gas and other chemical munitions on a sustained basis immediately outside a residential building. The harms to Plaintiffs from the administrative stay are grievous—potentially fatal—and the question whether an administrative stay may issue without any showing of exigency or irreparable harm from the government has implications far beyond this case.

**INTRODUCTION**

Plaintiffs respectfully file this emergency motion for reconsideration and reconsideration en banc of the administrative stay entered by a divided panel of this Court yesterday, March 25. Plaintiffs recognize that rehearing of an administrative stay is uncommon, but as the district court explained, "this is an extraordinary case," Op. 4 (Dkt. 75), and the panel's administrative stay exposes Plaintiffs to an extraordinary risk of severe and potentially fatal harm just two days from now.

This case concerns the Department of Homeland Security's repeated use of tear gas and other chemical munitions—many dozens of times over an 8-month period—next to an affordable housing complex in Portland known as Gray's Landing, which sits less than 100 feet from the Portland ICE facility. As the district court found following an evidentiary hearing, DHS has consistently used tear gas and other chemical munitions in response to minimal or no threats from protests, in such large quantities that the toxic chemicals regularly flood into Gray's Landing apartments, sickening residents. Shockingly, the government did not deny below that, on multiple occasions, it has created large plumes of tear gas immediately outside of Gray's Landing for the specific

purpose of generating propaganda videos, including two that DHS posted to its Instagram account.

Plaintiffs are among the residents of Gray's Landing who have suffered serious physical and psychological injuries from this conduct. One Plaintiff has Cushing's disease, and due to the effects of the tear gas incidents, she had surgery earlier this month to have one of her two adrenal glands removed. While recovering from the surgery, similar tear gas incidents could be fatal. Another Plaintiff has a child who now needs to use inhalers to breathe, and two more Plaintiffs are small children who repeatedly had to go to urgent care clinics. Other Plaintiffs have had severe breathing difficulties and fainting episodes when the chemicals enter their apartments. Yet others have pre-existing conditions that the chemical munitions have triggered or worsened. Plaintiffs and their children have regularly resorted to sleeping in closets and bathtubs to try to mitigate their exposure to the chemicals that DHS has knowingly released into their homes.

Twenty days ago, the district court entered a preliminary injunction tailored to preventing chemical munitions from entering Plaintiffs' homes. That injunction followed a TRO entered 51 days ago by a different district court in a case brought by protesters, which was in place for four weeks. *Dickinson v.*

4

*Trump*, No. 3:25-cv-2170-SI (D. Or.) (Feb. 3, 2026). The government did not appeal that TRO, and waited ten days from the injunction in this case to file an appeal and seek a stay. The government's stay motion included one sentence seeking an administrative stay, without discussion of the standards applicable to administrative stays or presentation of irreparable harms the government faced to justify an administrative stay. The stay motion as a whole included just a single paragraph on the government's purported irreparable harm, consisting entirely of conclusory sentences with no citation to evidence.

And yet yesterday, after the government has been subject to one or more injunctions limiting their use of chemical munitions for eight weeks, the divided motions panel issued an administrative stay "to maintain the status quo." The order did not discuss any "sufficient exigency" the government faced to justify this intervention, which is a prerequisite for an administrative stay under this Court's precedents. *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). The panel scheduled argument on the government's motion for a stay pending appeal—and on its additional request to stay the entire district court case—for nearly two weeks from now, on April 7.

Plaintiffs filed their opposition to those motions earlier today, but seek emergency en banc relief from the administrative stay because of the dire

harm it may cause Plaintiffs. Just two days from now, "No Kings" protests are scheduled across the country, including in Portland. Prior No Kings protests have resulted in large crowds outside the Portland ICE facility, in response to which DHS has deployed chemical munitions that have severely injured Plaintiffs. Because of the administrative stay, nothing will stop DHS agents from releasing massive volumes of tear gas and other chemical munitions, as they have routinely done in the face of non-violent protests. The question is not whether Plaintiffs will be severely injured if that happens, but how badly. By contrast, Defendants have not even attempted to show how they will be injured by the injunction remaining in place until their full stay motion can be resolved.

Because the panel's administrative stay squarely conflicts with this Court's precedent on administrative stays, and this matter is of exceptional importance, Plaintiffs respectfully seek emergency en banc relief from the administrative stay, and other appropriate relief described below.

## BACKGROUND

Plaintiffs' opposition to the motion for a stay pending appeal, filed earlier today, provides a detailed background on the facts and procedural history of this case. *See* Opp. to Stay Motion at 4-17. Plaintiffs here highlight only the factual and procedural history most relevant to the instant emergency motion.

Over the eight-month period from June 2025 to February 2026, DHS officers regularly deployed tear gas and other chemical munitions in the face of non-violent protests outside the Portland ICE facility, which is located less than 100 feet from the Gray's Landing complex at its closest point. The record below established that DHS deployed these munitions many dozens of times, including several times a week last summer and five days during an eight-day span in late January to early February this year. Op. 12 & n.12.

Many times, DHS officers have fired projectile chemical munitions from the street and upper levels of the ICE building using self-described "launchers," shooting directly toward Gray's Landing. Chemical munitions fired in this manner have shattered Gray's Landing apartment windows, Op. 22, 47 (citing Ex. 58, https://youtu.be/f3uUEfJ779U), landed in the Gray's Landing courtyard where children play, *id.* at 42–43, and come to rest immediately under and next to residents' units, including Plaintiffs', *id.* at 14 (citing Ex. 1, https://youtu.be/CMteqdAbzVY); *id.* at 24 (citing Ex. 56, https://youtu.be/L4TN3vRLUMQ).[1] The district court found that, at other times, DHS officers walked a block or more away from the ICE facility, circling Gray's Landing,

---

[1] Plaintiffs' video exhibits (except Exhibit 19) are available at https://www.youtube.com/playlist?list=PLZZGlWOJfMoKqIGj57J_TvLfam5rak5aN. Exhibit 19 is available at https://youtu.be/NQtm5LATz_o.

and released the chemical munitions from the streets there immediately next to the apartment complex. *Id.* at 15–16, 42–43 (citing Ex. 19, https://youtu.be/NQtm5LATz_o).

As a result of Defendants' continuous deployment of chemical munitions, Plaintiffs and others at Gray's Landing have suffered serious health consequences—acute respiratory distress, burning on their skin, eyes, and throats, permanent or sustained headaches, slurred speech, dizziness, prolonged allergic reactions, voice changes, and intense PTSD episodes. They include residents with pre-existing conditions that the tear gas has significantly worsened, such as Cushing's disease, muscular dystrophy, and mast cell activation syndrome. Op. 6–7, 50; Dkt. 46-10 ¶¶ 4, 13–14; Dkt. 46-11 ¶¶ 4–6; Dkt. 46-12 ¶ 6. They include domestic violence survivors for whom the chemical munitions have triggered intense PTSD episodes, including multiple instances of one Plaintiff urinating on herself while DHS used chemical munitions outside her apartment. Dkt. 46-6 ¶ 7. Another Plaintiff, an elderly veteran, has been diagnosed with mild heart failure after falling four times in reaction to the gas. Op. 49. Two Plaintiffs are small children who repeatedly had to go to urgent care, and another Plaintiff's child now needs to use inhalers to breathe and

medications to treat allergic reactions and anxiety due to the gassings. *Id.* at 50; Dkt. 46-11 ¶¶ 11–12; Dkt. 46-9 ¶ 7.

One Plaintiff, Diane Moreno, suffers from Cushing's disease, which causes the body to produce too much cortisol. Op. 6–7. Due to that disease, cortisol spikes from stress cause her body to become dysregulated, including her metabolism, blood pressure, blood sugar, and immune response. Dkt. 46-10 ¶ 13. DHS's repeated release of tear gas into Moreno's apartment "increased [her] cortisol levels and exacerbated [her] Cushing's disease," leading her doctors to recommend surgery to have one of her two adrenal glands removed. Op. 50 (quoting Dkt. 46-10 ¶ 13–14). She had that surgery earlier this month and is currently recovering. But removing her adrenal gland creates different severe risks from future incidents of chemical munitions entering her apartment. While she recovers, any "high-stress situations, injuries, intensive physical activity, or immune reactions … put [her] at risk for an adrenal crisis—life-threatening hypertension and hypovolemia." *Id.* at 6–7 (quoting Dkt. 46-10 ¶ 15); *see also* Tr. 36:1-14.[2] Moreno is unable to leave her apartment this weekend; to the contrary, escaping the gas will be more difficult than ever, and

---

[2] Plaintiffs have filed the transcript of the evidentiary hearing as an exhibit to their opposition to the government's stay motion.

even a coughing fit could do significant damage as she recovers from the abdominal surgery.

The district court found that DHS continued to use mass volumes of tear gas and other chemical munitions outside Gray's Landing even after being notified of these effects on Plaintiffs and other Gray's Landing residents and staff. That notice came from direct communications from Gray's Landing staff, from congressional outreach, and from this lawsuit. Op. 43; *see* Dkt. 46-13 ¶ 5; Ex. 33. Indeed, even after Plaintiffs filed declarations documenting their harms, DHS deployed mass volumes of tear gas next to Gray's Landing on five days over an eight-day span between January 24 and February 1, 2026. *See* Op. 12 & n.12, 47; Exs. 37–46.

The district court entered a preliminary injunction on March 6, 2026, based on a voluminous record that included an evidentiary hearing. The record includes testimony from 15 witnesses: four Plaintiffs who testified live in court and submitted declarations, one expert for Plaintiffs who did the same, two government witnesses who submitted declarations and whose deposition testimony was admitted, and eight Plaintiffs or employees of Plaintiffs who submitted declarations. The record includes 72 exhibits that Plaintiffs introduced into evidence—among them numerous videos and photographs—as well as

10

hundreds of pages of DHS incident reports. The government did not present any live witnesses or visual evidence, and did not dispute the accuracy of any of Plaintiffs' testimony or evidence.

In its preliminary injunction opinion, the district court held that Plaintiffs were likely to succeed on the merits of their substantive due process claims. Applying the well-established framework for evaluating substantive due process claims, *see Scott v. Smith*, 109 F.4th 1215, 1228 (9th Cir. 2024), the district court found that plaintiffs were likely to establish the three elements of their claim: (1) DHS burdened Plaintiffs' right to liberty, and specifically the right to bodily integrity that the Supreme Court has recognized for centuries; (2) DHS acted with time to deliberate; and (3) DHS acted with deliberate indifference to Plaintiffs' harms, in a manner that shocks the conscience. Op. 33–48. The court's holdings on each of these elements rested on extensive factual findings, which drew largely from uncontested video evidence and accompanying testimony. The court also made factual findings as to the extreme irreparable injuries that Plaintiffs faced absent an injunction. *Id.* at 49–51.

The district court denied the government's request for a stay pending appeal. The court noted that "Defendants ask that the Court issue a stay, but

11

they do not explain why." Op. 56. The government entirely failed to "explain how they will suffer irreparable injury absent a stay." *Id.*

Giving "due regard to the competing interests between Defendants' need to do their jobs safely and the Resident Plaintiffs' right to the most fundamental aspects of liberty," the court entered a preliminary injunction that prohibits using chemical munitions only when: (1) the chemicals are "likely to reach Gray's Landing," and (2) the munitions are not "determined to be necessary to address an imminent threat to life." Op. 57.

The district court's preliminary injunction followed a TRO that a different district court entered on February 3, 2026, in a First Amendment case brought by protesters and journalists. *Dickinson v. Trump*, No. 3:25-cv-2170-SI (D. Or.). That TRO, which more broadly prohibited uses of chemical munitions outside the ICE facility, lasted for 28 days, expiring a few days before the preliminary injunction in this case. The government never appealed the TRO in *Dickinson*.

In this case, the government waited ten days to appeal the preliminary injunction and seek a stay pending appeal. The motion included half a sentence requesting an administrative stay, with no explanation of the need for one or citation to this Court's standard for administrative stays. Dkt. 3.1 at 1. As a

12

whole, the motion included just one paragraph at the end of the brief on the purported irreparable harm that the government faced absent a stay, and those harms were all abstract institutional interests and not specific harms tied to evidence in the record. *See id.* at 20. The government also requested that "the Court stay proceedings below until the merits of the government's appeal are decided," citing speculative concerns about possible discovery. *Id.* at 21. The government never sought a stay of all proceedings from the district court.

On March 25, nine days after the government filed its stay motion, 19 days after the district court's preliminary injunction, and nearly eight weeks after the *Dickinson* court entered its original TRO, the divided motions panel issued an administrative stay "to maintain the status quo." Dkt. 9.1 at 1–2. The court expedited briefing on both "the motions to stay pending appeal and to stay district court proceedings," and scheduled argument for April 7. *Id.*

Judge de Alba dissented, explaining that "[n]owhere does the government reference the standard applicable to administrative stays in this circuit," "[n]or does the government show a sufficient exigency to justify changing the status quo." *Id.* at 3 (citing *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019)).

The administrative stay came three days before No Kings protests are planned around the country, including in Portland, on Saturday, March 28, 2026. Flyers suggest that a rally is specifically scheduled to occur outside the ICE facility that afternoon. Prior rallies after No Kings protests have led to DHS using mass volumes of chemical munitions. Op. 12 n.2 (CBP used chemical munitions on October 18, 2025); *After 'No Kings,' protesters tear gassed at Portland ICE facility*, KOIN News, Oct. 18, 2025 https://www.koin.com/news/portland/ice-facility-protest-portland-no-kings-night-10182025/ ("Around 7:30 p.m., federal agents tossed tear gas and smoke bombs into the crowd in front of the ICE facility as armed officers stood on the roof peering down.").

## ARGUMENT

This Court should rehear en banc and vacate the administrative stay entered yesterday, and enter other appropriate relief. The panel's order directly contravenes this Court's precedent on the standards for granting an administrative stay, and the consequences of the administrative stay are of exceptional importance. *See* Fed. R. App. P. 40(b)(2).

**I.    The Administrative Stay Contradicts this Court's Precedents on the Standard for an Administrative Stay**

This Court set forth the standards for an administrative stay in *Doe #1*. The Court held that a party seeking an administrative stay—there, the federal

government—must show "sufficient exigency to justify changing the status quo," in the form of "immediate" harm that the party will suffer absent an administrative stay. 944 F.3d at 1223.

Here, the panel did not require any showing of "sufficient exigency" to justify an administrative stay, let alone find that any such immediate harms to the government exist. The panel entered the administrative stay solely "to maintain the status quo." Dkt. 9.1 at 2. And even then, it applied an incorrect definition of the status quo, as described below. The panel's entry of an administrative stay without requiring any showing of imminent harm to the government squarely contradicts *Doe #1*.

The panel's error was dispositive here because the government has not and could not show immediate harm that would justify an administrative stay. The government did not even try to make that showing. Its motion contains no discussion of why an administrative stay was necessary to prevent harm to the government. Even as to the longer stay pending appeal, the government relegates irreparable harm to a single paragraph at the end of the motion, Mot. 20, and that paragraph relies entirely on "conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1060. The government cites abstract concerns about "the separation of

15

powers" and having a court place "constraints" on their "ability to enforce federal law." Mot. 20. Those purported harms are erroneous and would not justify a full stay pending appeal in any event (as Plaintiffs explain in their stay opposition). But they certainly are not immediate or concrete enough to justify an administrative stay.

The government could not, in fact, show immediate irreparable harm given that it complied with materially similar restrictions on chemical munitions outside the Portland ICE facility—without incident—for eight weeks prior to the administrative stay. By the time the government filed its motion in this Court, it had been operating under injunctions for 38 days: first under the 28-day TRO in *Dickinson* and then under the preliminary injunction here (entered March 6). During that 38-day period and the three weeks since, DHS has not identified a single instance in which the injunctions prevented officers from responding to a threat, compromised officer safety, or impaired operations at the Portland ICE facility.

The government's delays in seeking appellate relief further underscore the lack of any actual harm. The government did not appeal the *Dickinson* TRO and then waited 10 days to appeal the preliminary injunction in this case.

The government's actions belie any notion that there are exigencies requiring immediate intervention.

The fact that the government had been operating under injunctions on their use of chemical munitions for *nearly two months* also demonstrates that the panel, again in contravention of *Doe #1*, applied the wrong definition of the "status quo." The "status quo [was] disrupted by granting the temporary stay request," *Doe #1*, 944 F.3d at 1223, not maintained.

The panel's departure from this Court's binding standards for administrative stays not only justifies en banc relief in the context of this case, but it also sets a dangerous precedent. If the federal government may obtain weeks-long administrative stays without *any* showing of irreparable harm or other exigencies, even where an administrative stay disrupts the status quo upon which plaintiffs' rights depend, the government would be entitled to administrative stays virtually any time it asks for one. This Court should make clear that is not the law.

17

## II.   This Matter Is of Exceptional Importance

En banc rehearing is independently warranted given the exceptional nature of this case and the administrative stay specifically.[3] This case involves the first known instance in which the federal government has ever deployed tear gas and other chemical munitions on a sustained basis immediately outside the same residential building, infiltrating residents' apartments.[4]

As Plaintiffs' expert testified below, there are no medical studies on the harms that will result from this repeated indoor exposure, but even isolated exposures have been shown to cause severe and lasting physical effects. Tr. 57:25–58:17; 62:21–63:11. The CDC itself describes the chemical munitions used here as "poisoning" that may cause "blindness, respiratory failure, and death." *Riot Control Agents Chemical Fact Sheet, CDC Chemical Emergencies*, (Sept. 6, 2024), https://perma.cc/F3TW-AJQB. The CDC advises that these risks are especially acute with indoor exposures, and their only advice

---

[3] Plaintiffs explain in their full stay opposition why the district court correctly held that Plaintiffs are likely to succeed on the merits of their substantive due process claim. Plaintiffs do not address the merits in this motion only because it is not directly pertinent to the administrative stay.

[4] Notably, the government's actions have gone far beyond protecting the ICE facility. As the district court found, the government has never provided an "adequate justification for well-documented incidents of large-scale deployments of chemical munitions down the street from the Portland ICE Facility, immediately outside Gray's Landing." Op. 42.

18

"[i]f the riot control agents were released indoors" is to "get out of the build-ing." *Id.* Unfortunately, Plaintiffs cannot—the chemicals are in their homes and they cannot afford to move.

That the federal government is *knowingly* inflicting these harms on Plaintiffs and Gray's Landing residents, over and over again, is a matter of exceptional importance, to say the least. And this administrative stay itself is of exceptional importance given the very real, extreme potential harms Plaintiffs face in less than 48 hours.

If DHS releases tear gas on March 28 after the No Kings rally, as they have done before—even while Plaintiffs' preliminary injunction motion was pending—Plaintiffs such as Diane Moreno face mortal danger. Plaintiffs who are small children, veterans, and domestic violence survivors with PTSD will be traumatized all over again. These ordinary citizens should not be subjected to these harms in the name of an "administrative stay."

## III.   The Court Should Enter Other Appropriate Relief

Plaintiffs respectfully request that this Court take other appropriate actions to ensure that any disposition of the stay pending appeal does not expose Plaintiffs to immediate risk and require further emergency motions practice.

19

Plaintiffs submit that this appeal meets the standards for initial hearing en banc given the extraordinary importance of this case and the unprecedented government conduct at issue. *See United States v. Idaho*, Nos. 23-35440, 23-35450 (9th Cir. Nov. 13, 2023), Dkt. 73 (vacating panel's stay pending appeal and granting initial en banc hearing). In the alternative, the en banc Court could order that any stay entered by the panel not take effect for some period of days after entry, to enable Plaintiffs to seek en banc relief. Protests outside the Portland ICE facility may arise at any moment, and Plaintiffs should not be made to suffer a single additional instance of being gassed in their homes.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc, vacate the administrative stay, and order any other appropriate relief.

Respectfully Submitted,

/s/ *Stephen K. Wirth*
Stephen K. Wirth
Daniel F. Jacobson
Lynn D. Eisenberg
Brian C. Rosen-Shaud
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave., NW, Suite 301
Washington, DC 20016
(301) 615-2336
stephen@jacobsonlawyersgroup.com

20

Brian D. Netter
Jeffrey B. Dubner
Anna L. Deffebach
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

Katie Schwartzmann
PROTECT DEMOCRACY
201 St. Charles Ave., Suite 114
New Orleans, La 70170

Darin M. Sands
Colin Hunter
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

Taylor Jaszewski
BRADLEY BERNSTEIN SANDS LLP
1212 Broadway, Suite 1100
Oakland, CA 94612

March 26, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form16instructions.pdf](http://www.ca9.uscourts.gov/forms/form16instructions.pdf)

**9th Cir. Case Number(s)** | 26-1575

**Case Name** | REACH COMMUNITY DEVELOPMENT v. DHS

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

Vacate the administrative stay entered by the motions panel on March 25, 2026.

Relief is needed no later than *(date)*: 10AM on March 28, 2026

The following will happen if relief is not granted within the requested time:

Plaintiffs face the imminent threat of exposure to chemical munitions in their homes when there is a planned protest on March 28, 2026. Similar protests have resulted in large crowds outside the Portland ICE facility, leading DHS to deploy chemical munitions that have severely injured Plaintiffs, as explained in Plaintiffs' emergency motion.

I could not have filed this motion earlier because:

The motions panel granted an administrative stay yesterday, March 25, 2026. Plaintiffs promptly began drafting their emergency motion and are filing within 24 hours of the panel's order.

*Feedback or questions about this form? Email us at* [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)

**Form 16** | *1* | *Rev. 11/21/2019*

I requested this relief in the district court or other lower court:  ○ Yes  ◉ No

If not, why not:

> A motions panel of this Court entered the administrative stay.

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ◉ Yes  ○ No

If not, why not:

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: March 26, 2026

By *(method)*: Email

Position of other parties: Defendants-Appellants oppose this motion.

Name and best contact information for each counsel/party notified:

> Brenna Scully, Brenna.Scully@usdoj.gov
> August Flentje, August.Flentje@usdoj.gov
> Mark. Freeman, Mark.Freeman2@usdoj.gov

I declare under penalty of perjury that the foregoing is true.

**Signature** | /s/ Stephen K. Wirth | **Date** | 3/26/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 26-1575

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

● Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4047 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Stephen K. Wirth **Date** 3/26/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*