FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 27 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| REACH COMMUNITY DEVELOPMENT; WHITFIELD TAYLOR, individually and as Parent and Next Friend of Minor Children A.T. and B.T; MINDY KING; SUSAN DOOLEY; JANICE LINEBERGER; JANE DOE; REBECCA ROE; REACH B49 PARTNERS, LP; REACH OFFICE, LLC; DIANE MORENO; ERICA DEL NIGRO, individually and as Parent and Next Friend of Minor Child J.D.; ROY BROOKS, | No. 26-1575 D.C. No. 3:25-cv-02257-AB District of Oregon, Portland ORDER |

Plaintiffs - Appellees,

SHAE ANDERSON,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, in his official capacity as Acting Director of ICE; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as the Commissioner of CBP; FEDERAL PROTECTIVE SERVICE; FARON PARAMORE, in his official capacity as the Director of FPS; UNITED STATES

SECRET SERVICE; SEAN M. CURRAN,
in his official capacity as Director of the
Secret Service,

                Defendants - Appellants.

Before: Kenneth K. Lee, Ana de Alba, and Eric C. Tung, Circuit Judges.

TUNG, Circuit Judge:

The federal government has asked us to stay the district court's preliminary injunction pending appeal in this case. The district court preliminarily enjoined federal law enforcement officers from using non-lethal crowd-control devices (such as tear gas) to disperse demonstrators gathered outside a U.S. Immigration and Customs Enforcement (ICE) facility in Portland, Oregon. The plaintiffs who secured this preliminary injunction are not the demonstrators themselves; rather, they are several residents of a neighboring apartment complex (called Gray's Landing) and the corporation and its subsidiaries that collectively own and operate the complex. In granting the preliminary injunction, the district court held that the plaintiffs had a constitutional substantive-due-process right to "bodily integrity" to be free of exposure to chemicals that were released when federal law enforcement officers used tear gas and other non-lethal devices to disperse the crowds.

We hold that there is no such right. Neither the district court nor the plaintiffs have provided any indication that the substantive-due-process right they claim is to be found in our constitutional text or structure or is deeply rooted in our nation's

history and tradition. Because the federal government has thus made a strong showing that it is likely to succeed on the merits and has met the remaining stay factors, we grant the stay pending appeal. We also stay the district court proceedings pending appeal. Discovery on a meritless claim would serve no other purpose than to cause parties and the court to expend resources unnecessarily.

## I.

Since last summer, demonstrators have repeatedly gathered in front of the ICE facility in Portland, Oregon to protest ICE's efforts in enforcing this country's immigration laws. These demonstrations have varied in size—reaching in the hundreds or thousands on some days. Opinion & Order 13, 21 (Mar. 6, 2026). According to law enforcement incident reports submitted to us (and as acknowledged by the district court), several of these demonstrations have resulted in lawbreaking—including trespass, destruction of federal property, resisting law enforcement orders, threatening officers, brandishing weapons, throwing rocks and other hard objects at officers, and obstructing the movement of government vehicles to and from the facility. Sullivan Decl. Ex. A–H; Cantu Decl. Ex. 1 at 3–6, Ex. 4 at 8, Ex. 6 at 3; *see also* Opinion & Order 41. According to one incident report, during one such demonstration, an individual from the crowd threw a device onto the roof of the ICE facility, causing the roof to catch fire. Cantu Decl. ¶ 31.

Federal law enforcement officers have deployed non-lethal crowd-control

devices (such as tear gas) to disperse disruptive crowds and to prevent an escalation of lawlessness and violence. Some of the gas from the deployment of such devices has reached neighboring buildings, including Gray's Landing, an apartment complex in which several of the plaintiffs here reside. Opinion & Order 5–7, 10. Plaintiffs allege that, because of their exposure to the crowd-control chemicals, they have experienced serious health consequences—such as acute respiratory distress and the burning of the skin, eyes, and throat. Amended Complaint ¶ 121.

Plaintiffs brought a suit to enjoin the federal government from deploying such crowd-control devices. They alleged two claims: a Fifth Amendment substantive-due-process claim that their purported right to bodily integrity had been violated and a Fourth Amendment claim that their exposure to chemicals amounted to an unreasonable seizure. The district court granted a preliminary injunction in favor of Plaintiffs on the basis of their Fifth Amendment substantive-due-process theory (while rejecting their Fourth Amendment claim). Applying the four-factor test set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), the district court concluded that Plaintiffs had a likelihood of success on the merits and irreparable harm, and that the balance of equities and the public interest weighed decisively in their favor. Opinion & Order 54. The district court issued a preliminary injunction order that enjoined the federal government and its agents "from using chemical munitions in quantities such that the aerosolized chemicals

26-1575

discharged from said munitions are likely to reach Gray's Landing—including the Resident Plaintiffs' individual apartments." *Id.* at 57. The district court added: "Such use is prohibited unless it is determined to be necessary to address an imminent threat to life." *Id.*

On March 16, 2026, the federal government filed a motion for stay of the district court's preliminary injunction pending appeal and an immediate administrative stay pending resolution of this motion. The federal government also seeks a stay of the district court's proceedings until the appeal is resolved. On March 25, we granted an immediate administrative stay pending resolution of the motion.

## II.

We now grant the motion for stay pending appeal. The justification for a stay turns on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). We "review an order regarding preliminary injunctive relief for abuse of discretion, but review any underlying issues of law de novo." *Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021).

## A.

A stay is appropriate here. First, the government has made a strong showing that it is likely to succeed on the merits. Plaintiffs stake their case on the existence of a supposed constitutional right to be free from exposure to tear-gas chemicals used by law enforcement officers as a means of crowd control. Their claim fails.

No such right exists in the Constitution. Nothing in our constitutional text or structure evinces such a right. That much is not in dispute, and so Plaintiffs seek relief in a doctrine of last resort: substantive due process.

"Substantive due process," as the Supreme Court has warned, "has at times been a treacherous field," and "it has sometimes led the Court to usurp authority that the Constitution entrusts to the people's elected representatives." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022) (citations omitted). Accordingly, this court must "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [m]embers of this [c]ourt." *Id.* at 240 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

The established rule set forth in *Glucksberg*, and reaffirmed in *Dobbs*, requires that any claimed "right" not mentioned in the Constitution must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Dobbs*, 597 U.S. at 231 (quoting *Glucksberg*, 521 U.S. at 721). And in

26-1575

conducting this inquiry, we must "engage in a careful analysis of the history of the right at issue." *Dobbs*, 597 U.S. at 238.

The supposed constitutional right at issue has no basis in our nation's history or tradition. Plaintiffs have not pointed to any historical prohibition—much less a "deeply rooted" one—against the use of non-lethal crowd-control devices by law enforcement. To the contrary, such devices have long been a common tool of law enforcement to disperse crowds that have turned disruptive and violent. As far as we are aware, "no federal or state court" has recognized the Plaintiffs' claimed right. *Id.* at 241. Nor have the parties pointed us to "any scholarly treatise" that would support such a right. *Id.* Simply put, it does not appear to exist.

Even further afield, Plaintiffs want us to find an unwritten constitutional right (against the use of such devices) that is possessed not by the direct targets of the government action (such as the crowds) but by the neighboring residents who may be incidentally affected by that action. *See* Opinion & Order 4 ("[T]his case is not about the rights of protestors."). But if the direct targets of the action have no substantive-due-process right here, then neither does the neighbor.

More to the point, our Constitution is not a NIMBY charter. Our founding document does not address neighborhood grievances concerning unwanted smells and gas—no matter how unpleasant those may be. That is the province of localities and tort law. As the Supreme Court has emphasized, the "Constitution deals with

the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Plaintiffs' approach would transform the Constitution into "a font of tort law." *Paul v. Davis*, 424 U.S. 693, 701 (1976). We refuse to accept their invitation to do so here.

The district court and the Plaintiffs attempt to analogize to various cases in which courts have found substantive-due-process rights to "bodily integrity" in certain specific contexts. Opinion & Order 31–33; Amended Complaint ¶¶ 119–20; Brief in Opposition to Stay Pending Appeal 23–24, 27–28. But none of those cases address the specific right at issue here—whether a neighbor has a right to bodily integrity to be free from exposure to tear-gas chemicals deployed by law enforcement as a means of crowd control. Whether *that* right exists as a constitutional matter turns on whether it is deeply rooted in our nation's history and tradition; general analogy to inapposite caselaw is insufficient.

The district court's analysis illustrates a further problem. The district court purported to follow *Glucksberg*'s instruction to provide a "careful description" of the asserted substantive-due-process right by offering a six-part formulation of the right. But it failed, then, to anchor that carefully described right in any history or tradition. That was error.

One must first carefully describe the right, and then determine whether that right is historically rooted. *Glucksberg*, 521 U.S. at 724; *Regino v. Staley*, 133 F.4th 951, 960 (9th Cir. 2025) ("With that careful description in mind, we must *then* decide whether the asserted interest is 'objectively, deeply rooted in this Nation's history and tradition" (emphasis added)). One cannot simply pluck a "right" as general and abstract as "bodily integrity" from the caselaw, and then carefully describe that right on one's own terms without regard to whether that right is in fact grounded in history. Yet that is precisely what the district court did. *Glucksberg* and *Dobbs* would have easily come out the other way if the district court's analysis were followed: "There is a general right to 'bodily integrity,'" the chain of reasoning would proceed. "Next, the right is 'carefully described' as a right to assisted suicide or a right to an abortion. Finally, the right is accorded substantive-due-process protection." That is emphatically not the law, and we reject such an analysis.

The remaining stay factors support granting the government's request: "whether the applicant will be irreparably injured absent a stay"; "whether the issuance of the stay will substantially injury the other parties interested in the proceeding"; and "where the public interest lies." *Nken*, 556 U.S. at 426 (citation omitted). The last two factors "merge when the Government is the opposing party." *Id.* at 435.

The irreparable-harm and public-interest factors weigh in favor of the

government defendants "who have an uncontested interest in the protection of federal agents and property and the faithful execution of law." *Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025) (per curiam). The instances of lawlessness, threats of violence, assaults on federal agents, destruction of federal property, obstruction of movement of federal vehicles and personnel (and thereby the obstruction of the faithful execution of the laws)—documented by the incident reports (*supra* at 3)—were what prompted the use of crowd-control devices by law enforcement officers. The preliminary injunction prohibits officers from using common tools of crowd dispersal that would facilitate the protection of federal personnel and property and prevent the escalation of violence. That is unquestionably an irreparable harm to the government and undermines the public interest. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" (alteration in original) (citation omitted)); *Newsom*, 141 F.4th at 1054 ("The federal government's interest in preventing incidents like these is significant."); *Duncan v. Bonta*, 83 F.4th 803, 807 (9th Cir. 2023) (en banc) ("The public has a compelling interest in promoting public safety.").

There is another reason why a stay is warranted. The preliminary injunction is so broad and vague in scope as to be unworkable: the government is enjoined from

26-1575

deploying chemical munitions "in quantities such that" the chemicals "are likely to reach Gray's Landing[.]" Opinion & Order 57. But how much is too much; whether the gas is "likely to reach" the complex; all this is guesswork, and where a gas cloud travels will depend much on the weather. The district court's order appears to presume federal control over nature's elements. But the federal government has no more power to direct the winds than Cnut could command the tide. Such uncertainty produced by the injunction—the violation of which would subject federal law enforcement officers to contempt—is intolerable. *See Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026) (per curiam) ("[T]o the extent the injunction's breadth and vagueness cause[s] federal agents to hesitate in performing their lawful duties, it threatens to irreparably harm the government and undermine the public interest.").

**B.**

The dissent's arguments against a stay are unpersuasive. Perhaps given the baselessness of Plaintiffs' arguments on the merits, the dissent does not address the merits at all—despite that being a "most critical" factor. *Nken*, 556 U.S. at 434.

Instead, the dissent focuses only on the irreparable-harm factor. At the outset, the dissent claims that the government forfeited any irreparable-harm argument. Dissent at 1, 3. But that is wrong—the government plainly argued irreparable harm before the district court. *See* 3:25-cv-02257-AB, ECF No. 57 at 37–38 (Defs.' Preliminary Injunction Opp.) ("Plaintiffs' proposed injunction would irreparably

11

harm the government and the public interest" (citing declarations)). Resisting this conclusion, the dissent does not deny that the government argued "irreparable harm" before the district court, but instead asserts that the "argument was in relation to Plaintiffs' motion for a preliminary injunction, not the government's request for a stay pending appeal." Dissent at 3. That assertion is incorrect. The government argued "irreparable harm" in response to Plaintiffs' request for a preliminary injunction, *and*, in the same briefing on the very next page, requested a stay of the preliminary injunction (if the district court were to grant it). Clearly, the government's stay request relied on the same "irreparable harm" argument. The dissent would require the government to repeat its argument a few lines down to avoid forfeiture. But forfeiture is not a doctrine of trifles, and the government has provided adequate notice of its argument here.

In any event, the argument is not forfeited where (as here) the district court denied the stay request "on the same grounds" as its grant of the preliminary injunction. Opinion & Order 56; *see Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (permitting review of an issue "so long as it has been passed upon"); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Because the issue was expressly addressed and decided by the district court, raised on appeal,

and fully briefed by both parties, it is subject to review by this court.").[1]

The dissent argues that, in any event, the government fails to satisfy the irreparable-harm factor. But that argument is wrong, too. The dissent ignores that the hindrance on the government's ability to enforce the laws and to protect its personnel constitutes irreparable harm; nor does the dissent consider the risk of an escalation of violence attending the government's inability to use non-lethal crowd-control devices. Rather, the dissent asserts that the government's "compli[ance] with the preliminary injunction for 10 days" and with a TRO in a separate case (*Dickinson v. Trump*, No. 3:25-CV-2170-SI, 2026 WL 279917 (D. Or. Feb. 3, 2026))—before the government appealed the injunction—"strongly undercuts its irreparable harm argument." Dissent at 7–8. It does not. Tolerating a short-lived

---

[1] The dissent's reliance on the district court's statement (that "Defendants do not explain how they will suffer irreparable injury absent a stay") is misplaced. The government explained in detail its irreparable harm. *See supra* at 11. And contrary to the dissent's contention (at 5), the fact that the district court concluded, in any event, that the "balance of the equities" favors Plaintiffs means that the district court considered (and rejected) the government's "irreparable harm" argument. The dissent seeks to stress the differences between the *Winter* preliminary-injunction factors and the *Nken* stay factors (at 5 & n.3). But there is "substantial overlap" between them (*Nken*, 556 U.S. at 434), and the district court clearly treated them as overlapping when it denied the government's request for a stay "on the same grounds." Opinion & Order 56. Nor does the dissent's invocation (at 4–5) of Federal Rule of Appellate Procedure 8(a) and District of Oregon Local Rule 7-1(b) require that we find that the government forfeited its request to stay the preliminary injunction (and its "irreparable harm" argument). The district court did not invoke these non-jurisdictional rules to bar the government from requesting such a stay, nor do the plaintiffs invoke them before us.

inability to deploy crowd-control devices (on pain of contempt) while preparing an emergency appeal does not negate the government's irreparable harm. The lawlessness and risk of an escalation of violence remain.[2]

The dissent relies on *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020), but that case is not to the contrary. Dissent at 7. The preliminary injunction there (that this court declined to stay) is not comparable to the one here; indeed, the contrast between the two underscores the vague and improperly sweeping nature of the injunction here. The preliminary injunction in *Index Newspapers* stated that "journalists and legal observers" "shall not be subject to arrest for not dispersing following the issuance of an order to disperse." 977 F.3d at 823. But it made clear that "journalists and legal observers may not impede, block, or otherwise physically interfere with the lawful activities of the Federal Defendants, and recognizes that the Federal Defendants are free to issue '*otherwise* lawful crowd-dispersal orders for a variety of lawful reasons[.]'" *Id*. Moreover, the preliminary injunction in *Index Newspapers* "unambiguously provide[d] that the Federal

---

[2] The dissent mischaracterizes this risk as "conclusory" and "speculative." Dissent at 8 n.5. The declarations submitted by the government describe specific instances of violence and destruction of federal property that prompted the use of tear gas. *See supra* at 3; *see also* Press Release, City of Portland, *PPB Helps Facilitate Safe Free Speech Gathering and March; Arrests Made at South Waterfront* (Mar. 29, 2026), https://perma.cc/2447-3FZB (reporting that, on March 28, "protestors engaged in criminal activity and damaged the front gate at the ICE facility"; threw "large rocks" at officers; "vandaliz[ed]" the roof of the ICE facility; and caused further "vandalism and destruction to a door and the gate" of the ICE facility).

Defendants will not be held liable for violating the preliminary injunction by incidentally exposing journalists or legal observers to otherwise lawful crowd-control measures." *Id.* at 835. Here, by contrast, the federal government is *prohibited* from using crowd-control measures that would "incidentally expose" the residents at Gray's Landing to tear gas or other chemicals. And unlike the injunction in *Index Newspapers*, the injunction here enjoins the federal government from using crowd-control measures in response to demonstrators who physically interfere with lawful activities—so long as any amount of chemical is "likely" to reach Gray's Landing.[3] In short, *Index Newspapers* is entirely inapposite.

The dissent next states that the government points to no "instances in which federal officers 'hesitate[d] in performing their lawful duties' in light of the injunction." Dissent at 8. But the record is clear on this point. *See* 3:25-cv-02257-AB, ECF No. 58-2 at 29 (Deposition of FPS Deputy Regional Director Robert Cantu) ("[N]ow we are more selective of how we go out. And again, now with the taking away [of] the capability to use less-than-lethal [devices] forces us to have to resort to physical contact with people that are vandalizing, impeding, or

---

[3] Disregarding these key differences, the dissent asserts that the "salient point" is that "evidence of compliance" in *Index Newspapers*—even by a "different entity" (the City of Portland)—undercuts the government's claim of irreparable harm here. Dissent at 7 n.4. Not so. In *Index Newspapers*, the City had an "agreement" with plaintiffs "to enter into a stipulated preliminary injunction[.]" 977 F.3d at 836. There is no such agreement or voluntary stipulation by any entity here.

trespassing."). It is hardly surprising that, by removing a safer option and forcing officers to risk injury to themselves, the court's order would cause those officers to hesitate (*i.e.*, to be "more selective") before entering the fray to enforce federal law.

Finally, the dissent quotes excerpts from Plaintiffs' declarations that purport to demonstrate Plaintiffs' "irreparable harm." Dissent at 13–17. But those incidental harms do not outweigh the government's irreparable harm and the public interest, which we have described above. Even assuming that "the harms and equities are very weighty on both sides," however, the "best and fairest way" to determine whether to grant a stay pending appeal "is to evaluate which party is most likely to prevail in the end." *Labrador v. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring in the grant of stay). And here, it is amply clear that Plaintiffs will not prevail in the end on their substantive-due-process claim.

*     *     *

For the reasons stated above, we grant the government's motion for a stay pending appeal. We also grant the request to stay the district court's proceedings pending appeal. Plaintiffs invoke Federal Rule of Appellate Procedure 8 to argue that the government had to first move in the district court for a stay of proceedings before requesting a stay here. *See* Br. in Opp. to Stay Pending Appeal 40. But Rule 8 does not impose that requirement; while the rule requires, ordinarily, a party to move first in the district court for a stay of *an order* pending appeal (which the

16

government did here), the rule does not mention a request to stay proceedings. Similarly, the dissent asserts that the government "forfeited its motion" for a stay of proceedings, but the case it cites for that proposition has nothing to do with stays. Dissent at 18 (citing *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009)). We see no bar to exercising our discretion to grant a stay here: given that Plaintiffs' claim to a substantive-due-process right is meritless (and given that the district court did not find that Plaintiffs had a likelihood of success with respect to their remaining Fourth Amendment claim), there is no need for discovery to continue in the district court pending appeal.

**DEFENDANTS' MOTIONS ARE GRANTED.**

*Reach Community Development v. Department of Homeland Security*, No. 26-1575
de Alba, Circuit Judge, dissenting:

I would deny both motions before the court. For the reasons discussed below, the government has forfeited the arguments in its motions. If we were to assume, however, that the government did not forfeit its arguments, the government has not met its burden with respect to either motion.

**FILED**

APR 27 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**I.**

On a motion for a stay of a preliminary injunction, "we review the district court's findings of fact for clear error, its legal conclusions de novo, and the injunction's scope for abuse of discretion." *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 824 (9th Cir. 2020).

Our inquiry should begin and end with irreparable harm when the movant has not shown a likelihood of irreparable harm absent a stay. *See Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (concluding that, "if the [movant] has not made a certain threshold showing regarding irreparable harm[,] . . . then a stay may not issue, regardless of the [movant's] proof regarding the other stay factors") (quoting *Levia-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam)). We may analyze the scope of the preliminary injunction under the irreparable harm factor and, where the injunction is overbroad, we may issue a stay. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 834–35 (9th Cir. 2020).

1

"The bar for obtaining a stay of a preliminary injunction is higher than the *Winter* standard for obtaining injunctive relief." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In the context of a stay request, "simply showing some possibility of irreparable injury" is insufficient. *Doe #1*, 957 F.3d at 1058 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The demanding standard applicable here requires that the [government] show 'that irreparable injury is likely to occur during the period before the appeal is decided.'" *Index Newspapers LLC*, 977 F.3d at 824 (quoting *Doe #1*, 957 F.3d at 1059). The government "cannot carry this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Am. Fed. of Gov't Emps. v. Trump*, 139 F.4th 1020, 1029 (9th Cir. 2025) (citation modified).

The majority's suggestion to the contrary notwithstanding, we need not analyze the likelihood of success on the merits, or any of the other stay factors, when—as here—the government has failed to meet its burden of showing a likelihood of irreparable harm absent a stay. In such a circumstance, "a stay may not issue, regardless of the [movant's] proof regarding the other stay factors." *Doe #1*, 957 F.3d at 1058 (citation modified).

I address the government's irreparable harm and overbreadth arguments in turn.

2

**A.**

In reviewing the government's request for a stay pending appeal below, the district court noted that the government "ask[s] that the Court issue a stay, but [does] not explain why," and the government "do[es] not explain how [it] will suffer irreparable injury absent a stay." The government cannot now claim injury. *See One Inds., LLC v. Jim O'Neal Dist., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) ("A party normally may not press an argument on appeal that it failed to raise in the district court."); *see also id.* ("[A] party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents.") (citation modified).

The majority claims that the government argued irreparable harm before the district court. Yet that argument was in relation to Plaintiffs' motion for a preliminary injunction, not the government's request for a stay pending appeal.[1] Different standards apply to motions for a preliminary injunction and motions for a stay pending appeal. *See, e.g.*, *Index Newspapers LLC*, 977 F.3d at 824 ("The bar for obtaining a stay of a preliminary injunction is higher than the *Winter* standard for obtaining injunctive relief."). Yet the government supported its request for a

---

[1] Notably, the irreparable harm argument comprises a relatively short portion of the responsive brief (about two pages out of 39 pages). The government's argument regarding the scope of the injunction is similarly brief, a single paragraph comprising about half a page.

3

stay pending appeal with a single conclusory sentence: "Defendants have, at a minimum, satisfied the requirements for a stay pending appeal." *Cf.* FED. R. CIV. P. 7(b)(1)(B) (requiring that motions "state with particularity the grounds for seeking the order"). The government did not explain how or why its arguments in its response to Plaintiffs' motion for a preliminary injunction apply to and support its request for a stay pending appeal or otherwise state that it was incorporating its arguments in response to Plaintiffs' motion for a preliminary injunction in its request for a stay pending appeal. *Cf. id.*

Moreover, the majority admits that the government made its request for a stay pending appeal in its response to Plaintiffs' motion for a preliminary injunction. Nowhere did the government move for a stay pending appeal, the government's request for a stay was therefore never fully briefed below, and the government does not argue on appeal that it would have been impractical for it move for a stay pending appeal in the district court.[2] *Cf.* FED. R. APP. P. 8(a)

---

[2] Nor are all the arguments the government made with respect to irreparable harm (which includes the scope of the injunction), in its response to Plaintiffs' motion for a preliminary injunction, consistent with the arguments the government now makes in its motion for a stay pending appeal before this court. For example, below, the government stated, "[T]o remedy Plaintiffs' claims, any injunction should only concern the use of [tear] gas" rather than "chemical-based crowd control agents" generally. Yet, in its motion before this court, the government generally argues, "The injunction is also unworkable because it effectively prohibits [U.S. Department of Homeland Security (DHS)] officers from deploying chemical irritants . . . if they could possibly affect Gray's Landing."

4

(stating that a party "must ordinarily *move* first in the district court" for a stay of a preliminary injunction unless the party shows that moving first in the district court would be "impractical") (emphasis added); D. Or. L.R. 7-1(b) ("Motions may not be combined with any response."); *Thigpen v. Roberts*, 468 U.S. 27, 32 (1984) (expressing "little hesitation" in deciding an issue for the first time because, among other things, the parties' briefs from below were before it).

And while the majority claims that the district court denied the government's request for a stay pending appeal "on the same grounds" as its grant of the preliminary injunction, this is incorrect. The district court stated:

> Here, Defendants ask that the Court issue a stay, but they do not explain why. Defendants do not explain how they will suffer irreparable injury absent a stay. Additionally, to the extent the Court finds for Plaintiffs as to the likelihood of success on the merits, the balance of the equities, and the public interest, the Court similarly denies Defendants' request for stay pending appeal on the same grounds.

To break this down, the district court stated with respect to irreparable harm, "Defendants do not explain how they will suffer irreparable injury absent a stay." With respect to *other* stay factors, the district court stated, "the Court similarly denies Defendants' request for stay pending appeal on the same grounds."[3]

---

[3] While the district court referenced the "the balance of the equities," this is a *Winter* factor relevant to motions for a preliminary injunction. *See Winter*, 555 U.S. at 20. This is not a factor under *Nken*, which provides the standard governing motions for a stay pending appeal. *See Nken*, 556 U.S. at 434. Instead, "whether issuance of the stay will substantially injure *other* parties interested in the

Even if we were to put aside the government's failure to properly argue irreparable harm below, the government would still fail to meet its burden. In its motion for a stay pending appeal before this court, the government appears to make two irreparable harm arguments in a single paragraph, spanning less than one page: (1) the district court's injunction "assumed day-to-day oversight of the Executive's responses to [the] protests," which violates "the separation of powers [and] constitutes an irreparable harm to the Executive Branch"; and (2) to the extent that the injunction is overbroad and therefore causes federal agents to "hesitate in performing their lawful duties," the injunction "threatens to irreparably harm the government." These arguments are unavailing.

The first argument goes to a different *Nken* factor—whether the government "has made a strong showing of the likelihood of success on the merits"—and is not an irreparable harm argument. *See Doe #1*, 957 F.3d at 1058. After all, the judiciary may properly issue preliminary injunctions, even against the government, when the proper showing has been made. Indeed, this court has denied stays of

---

proceeding" is a *Nken* factor. *Id.* (emphasis added). That the district court addressed the government's failure to show irreparable harm separately from the balance of the equities suggests that the district court did not consider irreparable harm to the government in addressing the balance of the equities. Additionally, that the district court referenced a *Winter* factor in discussing the government's request for a stay is perhaps further reflection of the conclusory argument the government made in support of its request below and that the request was not properly and fully briefed below.

6

injunctions, including those that restrict officers' use of force during protests. *See, e.g.*, *Index Newspapers LLC*, 977 F.3d at 838.

The second argument is also unavailing. *Index Newspapers LLC* is instructive. There, the federal government sought a stay of a preliminary injunction restricting its use of force near a federal building in Portland, Oregon. *Id.* at 833. The government argued that the injunction was unworkable. *Id.* at 834. This court noted, however, that the City of Portland had agreed to operate under a similarly worded injunction, which "strongly undercut[]" the federal government's irreparable harm argument.[4] *Id.* at 833, 836.

Here, the government itself complied with the preliminary injunction for 10 days—without any apparent issue—before it appealed the injunction. Similarly, the district court noted that the government was under a temporary restraining order (TRO) in *Dickinson v. Trump* for 28 days prior to the issuance of the preliminary injunction in this case. No. 3:25-CV-2170-SI, 2026 WL 279917 (D. Or. Feb. 3, 2026). In relevant part, the TRO prohibited federal officers at and in the vicinity of the Portland U.S. Immigration and Customs Enforcement (ICE) facility from using chemical munitions "unless the specific target of such weapon

---

[4] The majority's attempt to distinguish *Index Newspapers LLC* is unavailing. The salient point is that *Index Newspapers LLC* concluded that evidence of compliance with an injunction—even by a different entity operating under similar circumstances—strongly cuts against an irreparable harm argument.

7

or device poses an immediate threat of physical harm to a law enforcement officer or other person." *Id.* at \*10. The district court in *Dickinson* found that the government complied with the TRO "without any indication of problem or prejudice, let alone irreparable harm." *Dickinson v. Trump*, No. 3:25-cv-2170-SI, 2026 WL 667742, at \*16 (D. Or. Mar. 9, 2026).

The government's compliance with the preliminary injunction here and the TRO in *Dickinson* strongly undercuts its irreparable harm argument.[5] Nor does the government point to instances in which federal officers "hesitate[d] in performing their lawful duties" in light of the injunction. *See Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1007 n.1 (9th Cir. 2000) ("[I]t behooves parties to treat appellate panels not as if we were pigs sniffing for truffles.") (citation omitted); *see also Doe #1*, 957 F.3d at 1058 (concluding that the movant carries the burden of proving irreparable harm). Moreover, the government's argument is remarkable given the district court's uncontested findings that federal officers' large-scale deployment of chemical munitions was often deliberate and in situations where its use appeared disconnected from any law enforcement purpose.

---

[5] The majority points to a possibility of lawlessness and an escalation of violence if the government cannot deploy chemical munitions in such a manner that the munitions would reach Gray's Landing—which is 100 feet away from the Portland ICE facility at its closest point—unless such deployment is necessary to address an imminent threat to life. Yet the government's burden of showing a likelihood of irreparable harm is not met by "conclusory factual assertions and speculative arguments." *Am. Fed. of Gov't Emps.*, 139 F.4th at 1029.

8

Notably, the Federal Protective Service (FPS) is the agency responsible for ensuring the protection of the Portland ICE facility. Roberto Cantu, the Deputy Director of FPS, Region 10 (which includes Oregon), stated that FPS' duty of protecting the Portland ICE Facility does not require the use of force "down South Bancroft Street or South Moody Avenue"—the intersecting streets between which the Portland ICE facility sits. Yet the district court found that such force was used. For example, the district court found that federal officers "deployed large amounts of chemical munitions" approximately "two blocks away from the Portland ICE Facility" and in front of Gray's Landing.

Even more striking, however, is the district court's finding that the government "posted short videos to its Instagram account" with footage of "a large gas cloud" about two blocks away from the Portland ICE facility. Plaintiffs argued that the deployment of chemical munitions depicted in the videos was for the purpose of social media content creation, not for any law enforcement purpose.[6] The government has not denied Plaintiffs' assertion, and the district court noted that the government did not offer "a justification for why so many chemical munitions were deployed so far from the Portland ICE Facility."

//

---

[6] "Plaintiffs," as used in this dissent, refers to the plaintiffs who are residents of Gray's Landing. The district court did not reach the claims of those plaintiffs who are business entities that own and operate Gray's Landing.

**B.**

Separate from its irreparable harm arguments, the government makes several arguments that the preliminary injunction is overbroad. To the extent that these arguments pertain to the irreparable harm factor, I address them here. *See Index Newspapers LLC*, 977 F.3d at 834–35.

"It is an abuse of discretion to issue an overly broad injunction." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024). Although district courts have "considerable discretion in fashioning suitable relief and defining the terms of an injunction," such relief "must be tailored to remedy the specific harm alleged." *Washington v. Trump*, 145 F.4th 1013, 1037–38 (9th Cir. 2025) (citation modified).

First, the government argues that, under the preliminary injunction, federal officers must account for conditions outside of their control, such as wind direction, which could increase the likelihood of chemical munitions reaching Gray's Landing. The majority concurs with this assessment. Yet, as the district court found, the record reflects that the government understands the impact ranges of the chemical munitions it uses, and the government does not contest this finding. Indeed, it would be reckless if the government did not understand the impact of munitions that it used, especially given the evidence that exposure to such munitions can create severe adverse health effects.

10

Second, to illustrate that the injunction is overbroad, the government references the declarations of Cantu and Timothy Sullivan, a Chief Patrol Agent of U.S. Customs and Border Protection's (CBP) Special Operations Group. For example, Cantu stated that chemical munitions are "key tools for deterring escalation before threats become imminent."[7] For his part, Sullivan stated that chemical munitions allow federal officers to "safely mitigate . . . volatile situations without resorting to the use of further physical or deadly force."

Yet the district court acknowledged that "federal officers at the Portland ICE Facility have faced a number of threats to federal officers and federal property, as well as conduct designed to interfere with officers doing their jobs," and the district court listed specific instances of such threats and conduct. Based on this, the district court found that "many incidents that officers faced required them to 'act decisively.'" (Citation omitted.) The district court explained, however, that this case "does not challenge the appropriate use of force in the immediate vicinity of the Portland ICE Facility when officers faced such threats to themselves, their building, or their mission"—instead, this case "challenges the large-scale, repeated deployment of chemical munitions that infiltrate the Gray's Landing apartments

---

[7] Notably, Cantu's declaration detailed several use-of-force incidents involving protesters; however, Cantu admitted that his declaration was based largely on information contained in reports that others had prepared rather than on his personal knowledge or experience at the Portland ICE facility.

11

and affect the Resident Plaintiffs who live there, particularly in moments where there was ample time to deliberate before deploying chemical munitions." The government does not engage the record as a whole or explain why the district court's findings—in light of the *entire* record—are clearly erroneous. *See Doe #1*, 957 F.3d at 1060 (concluding that, "in assessing whether the government has met its burden, we must examine and review the entire record").

Third, the government argues that U.S. Department of Homeland Security (DHS) policy allows for the use of chemical munitions when "objectively reasonable in light of the facts and circumstances confronting the [officer] at the time force is applied," and that the injunction is at odds with this policy and therefore "adds complexity to already dynamic situations." Yet it is undisputed that the federal officers charged with protecting the Portland ICE facility were affiliated with DHS agencies, predominately FPS, CBP, and ICE. Each of these agencies has policies with respect to the use of force, and the district court found that the federal officers' "deployment of large-scale chemical munitions runs contrary to the advice in the agency [policies] to avoid use in certain circumstances." (Emphasis omitted.) The government does not contest this finding, and it does not appear that the government relied on the DHS policy which it quotes before the district court. *Cf. One Inds., LLC*, 578 F.3d at 1158. Nor does

12

the government argue, let alone show, that the existence of a policy could or should prevent a court from crafting equitable relief that is contrary to the policy.

Ultimately, the government has not met its burden of showing a likelihood of irreparable harm absent a stay. By contrast, the district court determined that Plaintiffs would suffer irreparable harm absent preliminary injunctive relief.[8] More specifically, the district court found that Plaintiffs' continued exposure to chemical munitions has resulted in serious adverse health effects to Plaintiffs, stating:

- "From July to December 2025, [Plaintiff Roe] felt permanently sick and is currently suffering from the same symptoms again due to inhaling the gas on January 24[, 2026]" and called "911 because she experienced heart palpitations from the gas build up in Gray's Landing";

- "Because of Plaintiff Dooley's physical reactions to Defendants' use of tear gas, she fell four different times and required medical assistance each time and has been diagnosed with very mild heart failure";

- "Plaintiff Lineberger reported difficulty breathing and respiratory problems that continue to get worse [e]ach time the tear gas gets into [her] apartment";

---

[8] While the government carries the burden of showing a likelihood of irreparable harm absent a stay, the harm that the district court determined Plaintiffs will face absent preliminary injunctive relief is notable. *See Doe #1*, 957 F.3d at 1060.

13

- "Plaintiffs del Nigro and J.D.[, who is a minor,] now suffer from chronic respiratory issues, and both need inhalers despite never needing to use one before Defendants began using chemical munitions near Gray's Landing";

- "As a result of Defendants' conduct, Plaintiff Moreno states that these enormously stressful experiences have increased [her] cortisol levels and exacerbated [her] Cushing's disease[,] which has led to her doctors recommending that she have one of her adrenal glands removed";

- "The symptoms that Plaintiffs report are consistent with those commonly experienced by individuals exposed to chemical munitions," including "vomiting, wheezing, shortness of breath, chest pain, rapid heart rate, coughing, fluid in the lungs, the development of inflammatory membranes over the upper airways that affects speech and breathing, low oxygen levels, loss of consciousness, or death";

- "While scientific studies about the impacts of repeated exposure to chemical munitions are limited due to ethical limitations, expert testimony suggests that patients experience more severe or prolonged effects if they are subjected to repeated exposures"; and

- "Plaintiffs' symptoms are also consistent with the [Centers for Disease Control and Prevention's] guidance that exposure to chemical munitions

14

may cause chest tightness, coughing, choking sensation, . . . [and] shortness of breath[,] and create a risk of [r]espiratory failure[,] and death due to severe chemical burns in the throat and lungs caused by [l]ong lasting exposure or exposure to a large dose."

(Citation modified.)

The district court relied on the declaration of Rama Rao, a physician and the Chief of the Division of Medical Toxicology at Weill Cornell Medical College, who stated, "The ongoing use of deleterious chemical agents . . . in proximity to Gray's Landing, is a health hazard as it causes cardio-pulmonary, ocular, gastrointestinal and dermal injury that can be debilitating, severe or life-threatening.  The staff and residents, including children at Gray's Landing[,] have suffered poisoning often with prolonged health effects severe enough to require medical evaluation, intervention, or even hospitalization."

Notably, Rao testified that chemical munitions the government used near Gray's Landing "were designed to repel enemy combatants in war about a hundred years ago, and so they're designed to be painful to incapacitate, typically, soldiers." Dr. Rao testified that chemical munitions are "not truly gases, they're aerosols," and once "they land on objects" they "can be a source of ongoing exposure."  Rao noted incidents in Scotland where individuals became "very ill" from furniture that

15

had been exposed to teargas, even when the individuals were "as far away as 10 feet" from the furniture.

Plaintiffs have made extensive and unavailing efforts to minimize their exposure to the chemicals. The district court found that Plaintiffs' "injuries have continued despite Plaintiffs' mitigation efforts," including "buying an air purifier, cleaning [] carpets, and taking frequent showers"; "purchasing gas masks"; "placing towels under doors and sealing windows"; "attempting to move"; "wearing a gas mask to bed"; and "placing air scrubbing machines throughout Gray's Landing, regularly replacing HVAC filters, installing sticky mats to capture residue from shoes, among other measures." Notably, Gray's Landing is—as the district court noted—"an affordable housing complex that provides residential apartments for a wide variety of qualifying tenants, including young families, retirees, people with disabilities, domestic violence survivors, and military veterans." As Plaintiff del Nigro stated, "We're fortunate to be in low-income housing, and it took us a long time to be able to get into [Gray's Landing], and it's been difficult to find a new spot to move into that's affordable."

Nor—as the district court found—has the government "conveyed any intent to change their practices regarding the use of chemical munitions at the Portland ICE Facility absent court intervention"; instead, federal officers "have asserted in this proceeding that their use of chemical munitions was appropriate" and

16

"continued to use chemical munitions on several days after Plaintiffs filed this action." The government does not contest the district court's findings related to Plaintiffs' injuries.

## II.

In a single paragraph, spanning less than one page, the government requests a stay of the district court proceedings pending appeal because allowing further discovery during the pendency of appeal "would impose enormous costs on DHS" and, if the government's appeal of the preliminary injunction succeeds, "the scope of whatever discovery may be warranted" could be "significantly narrow[ed]."

"The district court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (capitalization altered). That said, this court has "repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction." *See California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). "Because of the limited scope of our review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *Id.* at 584 (citation modified).

17

Here, the government did not move for a stay of the district court's proceedings below and does not show that moving for a stay below would have been impractical. The government has therefore forfeited its motion. *See One Inds., LLC*, 578 F.3d at 1158. Regardless, the government's arguments, without more, would apply in almost every case. Yet this court has "repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction." *See Azar*, 911 F.3d at 583–84. Considering this, the government's arguments are unavailing.[9]

*       *       *

As I would deny both motions before the court, I respectfully dissent.

---

[9] The majority concludes that Plaintiffs' claim to a substantive-due-process right is meritless and grants the motion for a stay of the district court's proceedings pending appeal for that reason. Reaching the merits, however, is premature as the government forfeited the arguments in its motion to stay the preliminary injunction pending appeal and, regardless, has not shown a likelihood of irreparable harm. *See Doe #1*, 957 F.3d at 1058.

18