No. 26-1575

# In the United States Court of Appeals for the Ninth Circuit

REACH COMMUNITY DEVELOPMENT, *et al.*,

*Plaintiffs-Appellees,*

*v.*

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellants.*

On Appeal from the U.S. District Court for the District of Oregon
D. Or. Case No. 3:25-cv-2257 (Baggio, J.)

## MOTION FOR PANEL RECONSIDERATION AND RECONSIDERATION EN BANC

Brian D. Netter
Jeffrey B. Dubner
Anna L. Deffebach
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

Katie Schwartzmann
PROTECT DEMOCRACY
201 St. Charles Ave., Suite 114
New Orleans, La 70170

Taylor Jaszewski
BRADLEY BERNSTEIN SANDS LLP
1212 Broadway, Suite 1100
Oakland, CA 94612

Daniel F. Jacobson
Lynn D. Eisenberg
Stephen K. Wirth
Brian C. Rosen-Shaud
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave., NW, Suite 301
Washington, DC 20016
(301) 615-2336
dan@jacobsonlawyersgroup.com

Darin M. Sands
Colin Hunter
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

RULE 40 STATEMENT ......................................................................................1

BACKGROUND ..................................................................................................6

ARGUMENT ....................................................................................................10

I.    The Panel's Stay of the Preliminary Injunction Warrants
Reconsideration........................................................................................10

    A.    The panel's substantive due process holding conflicts with
precedent and is exceptionally important. ........................................10

    B.    The panel's failure to require concrete irreparable harm to
DHS conflicts with precedent and is exceptionally important. ........17

II.    The Panel's Stay of All District Court Proceedings Independently
Warrants Reconsideration........................................................................19

CONCLUSION.................................................................................................22

FORM 11 CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

**Cases**                                                                              Page(s)

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998)........................................................................2, 11, 12

*Cruzan v. Dir., Mo. Dep't of Health,*
    497 U.S. 261 (1990)..............................................................................14

*Doe #1 v. Trump,*
    957 F.3d 1050 (9th Cir. 2020) ..............................................................17

*Guertin v. Michigan,*
    912 F.3d 907 (6th Cir. 2019) ............................................................4, 16

*Hancock v. Train,*
    426 U.S. 167 (1976)..............................................................................20

*Index Newspapers LLC v. U.S. Marshals Serv.,*
    977 F.3d 817 (9th Cir. 2020) ............................................................5, 17

*Ingraham v. Wright,*
    430 U.S. 651 (1977)..............................................................................13

*Johnson v. Meltzer,*
    134 F.3d 1393 (9th Cir. 1998)..............................................................14

*Martinez v. City of Oxnard,*
    337 F.3d 1091 (9th Cir. 2003)..............................................................11

*Mirabelli v. Bonta,*
    146 S. Ct. 797 (2026).............................................................................15

*Moreland v. L.V. Metro. Police Dep't,*
    159 F.3d 365 (9th Cir. 1998) ................................................................11

*Nicholson v. City of L.A.,*
    935 F.3d 685 (9th Cir. 2019) ............................................................3, 14

*Obergefell v. Hodges,*
    576 U.S. 644 (2015)..............................................................................15

*P.B. v. Koch,*
    96 F.3d 1298 (9th Cir. 1996) ................................................................14

*Pauluk v. Savage,*
    836 F.3d 1117 (9th Cir. 2016) ..........................................................2, 14

ii

*Plumeau v. Sch. Dist. No. 40*,
    130 F.3d 432 (9th Cir. 1997) ..................................................................14

*Polanco v. Diaz*,
    76 F.4th 918 (9th Cir. 2023) ...................................................................14

*Regino v. Staley*,
    133 F.4th 951 (9th Cir. 2025) ........................................................2, 10, 15

*Riggins v. Nevada*,
    504 U.S. 127 (1992) ....................................................................2, 13, 14

*Rochin v. California*,
    342 U.S. 165 (1952) ...........................................................................2, 13

*Smith v. Albany County Sch. Dist. No. 1 Bd. of Trs.*,
    __ F.4th __, 2026 WL 1205777 (10th Cir. May 4, 2026) ................................11

*Union Pac. Ry. v. Botsford*,
    141 U.S. 250 (1891) ............................................................................13

*United States v. Al-Nouri*,
    983 F.3d 1096 (9th Cir. 2020) ..............................................................18

*Vazquez v. County of Kern*,
    949 F.3d 1153 (9th Cir. 2020) ..............................................................14

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ..................................................................2, 13, 15

*Washington v. Hous. Auth. of City of Columbia*,
    58 F.4th 170 (4th Cir. 2023) ................................................................5, 16

*Winston v. Lee*,
    470 U.S. 753 (1985) ............................................................................13

## Statutes & Rules

28 U.S.C.
    § 1292(a) .......................................................................................6, 19
    § 1651(a) .........................................................................................19
    § 2106 ............................................................................................19

Federal Rule of Appellate Procedure 40(b)(2) ...........................................1, 2, 5

## Secondary Authorities

Timothy M. Tymkovich et al., *A Workable Substantive Due Process*,
    95 Notre Dame L. Rev. 1961 (2020) ........................................................11

iii

## RULE 40 STATEMENT

A divided panel (Lee, Tung, JJ.; de Alba, J., dissenting) granted a stay of a preliminary injunction preventing Department of Homeland Security (DHS) officers from releasing tear gas next to an affordable-housing complex in Portland, Oregon, as officers had done dozens of times over an eight-month period when faced with non-violent protests. Plaintiffs are residents who have suffered extreme physical injuries when the toxic chemicals predictably infiltrate their homes and bodies. Following an evidentiary hearing and review of an extensive record, the district court granted a preliminary injunction to prevent further harms to these Plaintiffs.

The panel stayed the injunction pending appeal, holding that Plaintiffs categorically cannot establish a substantive due process violation, *even if* Plaintiffs show that DHS is knowingly introducing toxic chemicals into Plaintiffs' homes and bodies in a manner that shocks the conscience. The panel also stayed all district court proceedings—despite the government not seeking that relief below. The panel identified no statutory authority or jurisdictional basis for this blanket stay.

Pursuant to Federal Rule of Appellate Procedure 40(b)(2), Plaintiffs state that reconsideration en banc is warranted for the following reasons:

1

**1.** The panel's substantive due process holding conflicts with Supreme Court and circuit precedent, and presents exceptionally important questions of law. Fed. R. App. P. 40(b)(2)(A)–(D). Specifically, the panel's published holding that Plaintiffs here must meet the test set forth in *Washington v. Glucksberg*, 521 U.S. 702 (1997), for identifying a new unenumerated right squarely conflicts with Supreme Court and Ninth Circuit precedent, both on the test for establishing *any* substantive due process claim against executive actions and on the right to bodily integrity specifically.

Consistent with *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), this Court has held that there are "two different legal standards [for] substantive due process claims": one is "the fundamental rights standard" of *Glucksberg*, and "[t]he other is the 'shocks the conscience' standard." *Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025). The shocks-the-conscience standard applies to "executive" actions, as opposed to "legislation." *Lewis*, 523 U.S. at 845–46.

The Supreme Court and this Court have repeatedly held that executive actions that implicate bodily integrity violate substantive due process when they shock the conscience, and have *never* conducted a *Glucksberg*-like inquiry in these cases. *See, e.g.*, *Rochin v. California*, 342 U.S. 165 (1952); *Riggins v. Nevada*, 504 U.S. 127 (1992); *Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016);

*Nicholson v. City of L.A.*, 935 F.3d 685 (9th Cir. 2019). The panel's precedential holding contravenes all of this precedent and would radically change and limit substantive due process claims against conscience-shocking conduct by law enforcement.

Moreover, even if the fundamental rights standard were relevant to Plaintiffs' claim, the Supreme Court and this Court have *already* held that the right to bodily integrity implicated here—against the government's non-consensual introduction of substances into Plaintiffs' bodies—is fundamental and implicit in the concept of ordered liberty. The panel held otherwise only by recasting the asserted right to be fact-specific, based on *the means* by which DHS was invading Plaintiffs' bodily integrity: being "free from exposure to tear-gas chemicals used by law enforcement officers as a means of crowd control." Panel Op. 8. The panel evaluated whether *that right* was "deeply rooted in this Nation's history and tradition," and held it was not. *Id.* at 9.

This again flatly contravenes precedent. The Supreme Court and this Court have upheld bodily-integrity claims in many new factual circumstances with distinct means of invading bodily integrity. All of those cases would have come out differently if, as the panel required here, the plaintiff had to meet the *Glucksberg* test anew, defining the asserted right by the precise factual

3

mechanism by which the government was acting. The panel's published opinion creates a new qualified-immunity-like test for bodily integrity claims and, by extension, all substantive due process claims.

The consequences of the panel's legal errors are also exceptionally important here. The panel held that ordinary citizens have no constitutional right—indeed, no legal recourse at all—to stop federal officers from continuously releasing chemical munitions next to their homes, *knowing* that the poison gases are severely injuring residents. Under the panel's ruling, residents have no constitutional right to stop this conduct even where it is *undisputed* that federal officers have used these munitions for no law-enforcement purpose at all; the panel ignored that DHS has never disputed in this case—including at argument before the panel—that it released tear gas next to Plaintiffs' homes on multiple occasions solely to create propaganda videos for social media. Beyond the panel's legal errors, stopping such shocking conduct is itself a matter of exceptional importance.

**2.** The panel decision also conflicts with decisions by the Sixth Circuit and Fourth Circuit holding that government officials violate the right to bodily integrity by knowingly introducing toxic substances into residents' homes and bodies. *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019); *Washington v.*

*Hous. Auth. of City of Columbia*, 58 F.4th 170 (4th Cir. 2023). The panel ignored these cases, creating a circuit split. Fed. R. App. P. 40(b)(2)(C).

**3.** The panel decision conflicts with this Court's decisions on the exceptionally important question of the irreparable harm showing that law enforcement must make to justify a stay pending appeal. This Court has held that abstract, generalized assertions of harm to law-enforcement interests do not suffice. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020). Yet the panel accepted the same assertions of law-enforcement interests this Court has held insufficient. If such generalized interests suffice without a concrete showing of harm tied to the record, the irreparable-harm requirement will be no requirement at all when federal law enforcement seeks a stay of an injunction. And here, DHS did not and could not cite any concrete examples of irreparable harm it would suffer, after operating under injunctions against tear-gas use for over five weeks—without incident—before even seeking a stay.

**4.** The panel's unprecedented stay of all district court proceedings presents an exceptionally important question of appellate authority. The panel halted all district court proceedings—even though the government never requested that relief below—without identifying *any* legal authority,

5

jurisdictional basis, or Supreme Court or Ninth Circuit precedent for such a stay. This Court's appellate jurisdiction is limited by statute, and the panel did not (and could not) claim that 28 U.S.C. § 1292(a), the All Writs Act, or any other statute grants jurisdiction to stay an entire case in reviewing a preliminary injunction appeal. The panel instead held that motions panels have "discretion" to freeze entire cases, including cases like this one with multiple claims not implicated by the pending appeal. Left undisturbed, that precedential holding will create opportunities for mischief by government defendants and other parties seeking to delay proceedings below.

This issue will be practically unreviewable later because the stay of proceedings will end with the resolution of the merits appeal. Now is the only time to address this radical, extra-statutory expansion of appellate jurisdiction.

## BACKGROUND

Plaintiffs include twelve residents of Gray's Landing, an affordable-housing complex in Portland. PI Op. 4–9 (D. Ct. Dkt. 75). From June 2025 to February 2026, DHS officers regularly and indiscriminately deployed tear gas and other chemical munitions in the face of non-violent protests near the Portland ICE facility, which sits kitty-corner from Gray's Landing. DHS

6

deployed these munitions many dozens of times. Even after Plaintiffs submitted sworn declarations documenting their harms, DHS used tear gas in massive volumes more than ten times, on five different days over an eight-day span before DHS was enjoined. *Id.* at 12–25.

The district court found that DHS officers have deployed chemical munitions hundreds of feet away from the ICE facility, releasing tear gas and other chemicals immediately next to Gray's Landing, when facing no discernible threats. *Id.* at 15–16, 42–43. Many other times, DHS officers have fired long-range projectile chemical munitions toward Gray's Landing from the ICE building. Chemical munitions have shattered Gray's Landing apartment windows, landed in Gray's Landing's courtyard where children play, and come to rest immediately under Plaintiffs' apartments. *Id.* at 14, 22, 24, 42–43, 47.

*DHS has not disputed* that it repeatedly used chemical munitions next to Gray's Landing to create content for propaganda videos, filmed by DHS itself and by "influencers" who DHS invited to the ICE facility. PI Op. 16–17 & n.14, 46. The district court made unchallenged findings regarding one such incident on October 4, 2025, where federal officers released massive quantities of tear gas immediately adjacent to Gray's Landing to create a propaganda

7

video posted on DHS's Instagram account. *Id.* at 14–15, 46. When asked directly at oral argument before the panel whether this tear gas use was to create propaganda, the government again did not deny it. Oral Arg. 23:02–48. The district court made detailed findings concerning other incidents when officers released tear gas that infiltrated Plaintiffs' apartments despite facing no imminent threat against officers or the ICE facility. PI Op. 13–25.

Plaintiffs have suffered serious health consequences from the chemical munitions—acute respiratory distress, burning on their skin, eyes, and throats, sustained headaches, slurred speech, dizziness, allergic reactions, voice changes, and intense PTSD episodes. One Plaintiff recently had an adrenal gland removed because the tear gas exacerbated her Cushing's disease, and post-surgery she faces even more risks from exposures. *Id.* at 50; D. Ct. Dkt. 46-10 ¶¶ 4, 13–14. Another Plaintiff is a child who now depends on medications to manage newly developed chronic respiratory conditions and anxiety, and two more Plaintiffs are small children who have repeatedly gone to urgent care because of the gassings. Two Plaintiffs have pre-existing conditions—muscular dystrophy and mast-cell-activation syndrome—that the chemical munitions have significantly worsened. PI Op. 6–7, 50. And another Plaintiff, an elderly veteran, has been diagnosed with mild heart failure after

8

falling four times from the gas. *Id.* at 49. The gassings have also forced some Plaintiffs to regularly sleep wearing gas masks or in bathtubs and closets. *Id.* at 35 n.21.

The district court entered a preliminary injunction on March 6, 2026. The court held that DHS likely acted with deliberate indifference to Plaintiffs' harms, in a manner that shocks the conscience. *Id.* at 33–48. The court's preliminary injunction prohibits using chemical munitions only when they are: (1) "likely to reach Gray's Landing," and (2) not "determined to be necessary to address an imminent threat to life." *Id.* at 57. The court denied DHS's two-sentence request for a stay, which did not "explain how [it] will suffer irreparable injury absent a stay." *Id.* at 56. DHS did not ask to stay all proceedings.

On April 27, a divided panel issued a precedential order staying both the preliminary injunction and all proceedings below.

## ARGUMENT

### I. The Panel's Stay of the Preliminary Injunction Warrants Reconsideration

#### A. The panel's substantive due process holding conflicts with precedent and is exceptionally important.

Reconsideration is essential because the panel's precedential opinion squarely contradicts Supreme Court and Ninth Circuit precedent on the framework for evaluating substantive due process claims, both with respect to the right to bodily integrity specifically and for *all* substantive due process claims against executive actions. The panel erred in holding that Plaintiffs must meet the *Glucksberg* test for defining a new fundamental right for two reasons: (1) the shocks-the-conscience standard is an independent means of establishing that executive actions violate substantive due process; and (2) even if Plaintiffs needed to show a violation of a fundamental right, the right to bodily integrity implicated here is an established fundamental right. For these reasons, neither the Supreme Court nor this Court has *ever* conducted a *Glucksberg* inquiry in adjudicating a substantive due process claim against executive action implicating bodily integrity.

If left standing, the panel's precedential opinion would mark a sea change in this Circuit's substantive due process jurisprudence. At minimum,

10

it will cause mass confusion among district courts because of how clearly it contradicts circuit precedent.

**1.** This Court reaffirmed last year that there are "two different legal standards [for] substantive due process claims." *Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025). "One is the 'fundamental rights' standard" described in *Glucksberg*; "[t]he other is the 'shocks the conscience' standard, under which deliberate government action violates the Fourteenth Amendment if it is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). This Court has held that the tests are disjunctive: "The Fourteenth Amendment's Due Process Clause protects individuals from state action that *either* 'shocks the conscience' *or* interferes with rights 'implicit in the concept of ordered liberty.'" *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (emphases added; citations omitted).

The key difference between the tests is that "the 'shocks the conscience' standard … governs substantive due process claims arising from executive action." *Moreland v. L.V. Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (citations omitted); *Smith v. Albany County Sch.*

11

*Dist. No. 1 Bd. of Trs.*, __ F.4th __, 2026 WL 1205777, at \*9 (10th Cir. May 4, 2026) (explaining there are "two types of substantive due process claims," and applying "the fundamental-rights approach [to] *legislative action*, and the shocks-the-conscience approach [to] tortious *executive action*" (citations omitted)); *see* Timothy M. Tymkovich et al., *A Workable Substantive Due Process*, 95 Notre Dame L. Rev. 1961, 1964, 1980–82, 1999–2001 (2020).

*Lewis* made these two distinct tests clear: "the touchstone of due process is protection of the individual against arbitrary action of government," and the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer." *Lewis*, 523 U.S. at 846 (quotations omitted). "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* Justice Scalia objected that the shocks-the-conscience test departed from the *Glucksberg* fundamental-rights inquiry, but his view did not carry the day. *Id.* at 860 (Scalia, J., concurring in the judgment).

Accordingly, the panel erred in holding that the "rule set forth in the *Glucksberg*" governs here. Panel Op. 9. Plaintiffs instead must show that DHS's actions shock the conscience, because DHS has acted with deliberate indifference to Plaintiffs' liberty-based harms.

12

**2.** Even if Plaintiffs did need to identify a fundamental right deeply rooted in history and tradition, Supreme Court and Ninth Circuit precedent make clear that the right to bodily integrity implicated here—against the government's non-consensual introduction of substances into Plaintiffs' bodies—is such a right.

The panel recast Plaintiffs' claim as a "supposed constitutional right to be free from exposure to tear-gas chemicals used by law enforcement officers as a means of crowd control." Panel Op. 8. The panel then held that "no such right exists" because Plaintiffs had not identified historical authority addressing that precise mechanism of bodily invasion. *Id.* That approach and holding conflicts with Supreme Court and Ninth Circuit precedent—including *Glucksberg* itself—that recognizes the right "to bodily integrity" as one of the established "fundamental rights and liberty interests" protected by substantive due process. 521 U.S. at 720.

The Supreme Court has held that the fundamental right to bodily integrity encompasses the right against "[t]he forcible injection" of objects or substances, including chemicals, "into a nonconsenting person's body." *Riggins v. Nevada*, 504 U.S. 127, 134 (1992) (quotations omitted). That right traces back to the Supreme Court's recognition over a century ago that no

right is "more carefully guarded … than the right of every individual to the possession and control of his own person, free from all restraint or interference of others." *Union Pac. Ry. v. Botsford*, 141 U.S. 250, 251 (1891).

The Court has applied that right across multiple forms of compelled bodily intrusion or physical invasion: stomach pumping, *Rochin v. California*, 342 U.S. 165, 172–74 (1952); corporal punishment, *Ingraham v. Wright*, 430 U.S. 651, 672–74 (1977); compelled surgery, *Winston v. Lee*, 470 U.S. 753, 759–63 (1985); and unwanted medical treatment, *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278–79 (1990); *Riggins*, 504 U.S. at 134–35. In none of those cases did the Court evaluate whether there was a deeply rooted history and tradition of protections against stomach pumps, paddles, scalpels, feeding tubes, or antipsychotic medication in order to find Plaintiffs' liberty interests protected.

This Court, too, has held that "it is well established that a person's liberty interest in bodily integrity is one of the personal rights accorded substantive protection under the Due Process Clause." *Johnson v. Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998). And it has applied this right in new contexts far removed from medical battery, including sexual and physical abuse against students, *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432, 438 (9th

14

Cir. 1997); *P.B. v. Koch*, 96 F.3d 1298, 1302 (9th Cir. 1996); sexual harassment and abuse in the workplace, *Vazquez v. County of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020); exposure to toxic mold or disease, *Pauluk v. Savage*, 836 F.3d 1117, 1122–25 (9th Cir. 2016); *Polanco v. Diaz*, 76 F.4th 918, 926–30 (9th Cir. 2023); and injuries to bystanders, *Nicholson v. City of L.A.*, 935 F.3d 685, 692–95 (9th Cir. 2019).

None of this Court's or the Supreme Court's cases require plaintiffs to identify a deeply rooted history of protections against the same weapon, contaminant, conduct, or delivery method for invading a person's bodily integrity. By defining the right at the level of DHS's chosen means of injury, the panel turned the question of whether there is a substantive due process violation into a version of qualified immunity. *But see Regino*, 133 F.4th at 961–62 (rejecting a qualified-immunity approach to substantive due process rights).

Indeed, the panel's holding conflicts with precedent on the proper analysis for *all* fundamental-rights inquiries. The *Glucksberg* test is used for evaluating newly claimed unenumerated rights—not the short list of rights already held to be part of "the 'liberty' specially protected by the Due Process Clause." 521 U.S. at 720. Thus, in *Obergefell v. Hodges*, the Court rejected the

argument that *Glucksberg's* "careful description" requirement meant the Court had to evaluate whether there was a historical tradition for the "right to same-sex marriage." 576 U.S. 644, 671 (2015). Just as "*Loving* did not ask about a 'right to interracial marriage,'" the relevant due process right was "the right to marry in its comprehensive sense." *Id.* Just recently, the Court held that California policies that "prevent schools from telling [parents] about their children's efforts to engage in gender transitioning at school" violate parents' substantive due process right to "the upbringing and education of children." *Mirabelli v. Bonta*, 146 S. Ct. 797, 800, 803 (2026).

The panel thus erred in reducing one of our most established and carefully guarded liberty rights to a demand for a perfect analogue. Plaintiffs' challenge to DHS's knowing introduction of toxic gas into Plaintiffs' bodies implicates the bodily-integrity right long held to be fundamental.

**3.** The panel's decision also creates a circuit split on whether the government causing toxic chemicals to enter people's homes may violate substantive due process by impinging on bodily integrity. In *Guertin v. Michigan*, the Sixth Circuit held that officials violated substantive due process by knowingly causing lead-contaminated water to enter residents' homes and bodies. 912 F.3d 907, 919–22 (6th Cir. 2019). In *Washington v. Housing*

16

*Authority of the City of Columbia*, the Fourth Circuit held that a plaintiff stated a bodily-integrity claim where a local housing authority acted with deliberate indifference to the risk carbon monoxide would enter the plaintiff's home. 58 F.4th 170, 176–82 (4th Cir. 2023). The panel's holding here directly conflicts with these decisions.

### B. The panel's failure to require concrete irreparable harm to DHS conflicts with precedent and is exceptionally important.

It is also exceptionally important for the Court to correct the panel's contravention of circuit precedent on the irreparable-harm showing that law enforcement must make to obtain a stay pending appeal. Neither DHS nor the panel identified any record-specific harm DHS is likely to incur absent a stay. DHS provided no explanation below of how the lack of a stay would cause irreparable harm, PI Op. 56; Dissenting Op. 21–23. And its appellate stay motion had only a conclusory paragraph asserting vague institutional interests. Dissenting Op. 23–27; Stay Mot. 20–21. DHS's inability to cite any concrete, record-specific evidence of irreparable harm was unsurprising, because DHS had operated under injunctions on their use of chemical munitions in this case and *Dickinson v. Trump*, No. 26-1609, for *over five weeks* without incident, before DHS sought a stay.

17

Yet the panel overlooked this evidentiary void, holding that abstract law-enforcement interests in protecting personnel and property and using "common tools of crowd dispersal" was irreparable harm per se. Panel Op. 11–12. That holding conflicts with this Court's precedents that generalized harm to law-enforcement missions—untethered to record evidence of concrete harm—does not suffice to obtain a stay. *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 824, 833–36 (9th Cir. 2020); *see Doe #1 v. Trump*, 957 F.3d 1050, 1058–59 (9th Cir. 2020). The panel's stay conflicts with this Court's holding that the government cannot obtain a stay by simply asserting that a "preliminary injunction will hinder their ability to safely protect federal property and people on federal property." *Index Newspapers*, 977 F.3d at 835.

Under the panel's holding, stays of injunctions against federal law-enforcement conduct will become routine rather than extraordinary, because *every* injunction against law enforcement can be described as constraining law-enforcement activities and raising theoretical public-interest concerns. The panel's irreparable-harm holding will not be reviewable beyond the stay stage, and it must be corrected.

18

## II.    The Panel's Stay of All District Court Proceedings Independently Warrants Reconsideration

The panel's separate, unprecedented stay of the entire case independently warrants reconsideration. This stay presents an exceptionally important question about the limits of appellate jurisdiction and authority: whether a panel may, on an interlocutory appeal of a preliminary injunction, issue a blanket stay of all district-court proceedings pending resolution of the interlocutory appeal.

Remarkably, the panel did not identify *any* source of authority for this stay, and there is none. "The court of appeals is a court of limited jurisdiction, and its jurisdiction is expressly provided for by statute." *United States v. Al-Nouri*, 983 F.3d 1096, 1098 (9th Cir. 2020) (citation omitted). Under 28 U.S.C. § 1292(a)(1), this appeal is limited to the preliminary injunction "order[]," and that order here did not address a stay of all proceedings because DHS never sought one below. In its stay reply (at 15), the government invoked the All Writs Act and 28 U.S.C. § 2106. But the All Writs Act permits orders only "in aid of" jurisdiction, 28 U.S.C. § 1651(a), and there is no possibility continued district-court proceedings would impair this Court's jurisdiction over the preliminary-injunction appeal. Section 2106, likewise, merely supplies remedial authority for the disposition *of the order under review.* The panel did

19

not claim any statutory authority to stay lower-court proceedings; it simply asserted without citation that it had "discretion" to stay all proceedings below. Panel Op. 17.

If left standing, this precedential opinion will empower motions panels, adjudicating a stay of a preliminary injunction, to shut down entire cases whenever they choose. Panels could enter such stays based on their preliminary conclusions, on a preliminary record, regarding just one of the plaintiffs' claims. That is what happened here: Plaintiffs have alleged substantive due process violations not addressed in the preliminary injunction or the panel's decision—based on infringement of their freedom-of-movement and property rights.

If the panel denies reconsideration, immediate en banc review is necessary because the panel's stay of all proceedings will otherwise escape review, as the issue will become moot upon resolution of the full appeal. En banc review now is the only way to review an issue of enormous consequence in this Circuit going forward.

\*     \*     \*

Finally, the need for immediate review is especially acute because the panel's stay orders leave Plaintiffs—children, the elderly, medically

20

vulnerable persons, and domestic violence survivors with PTSD—unprotected from serious physical harm during the pendency of the appeal. As protest activity predictably increases this summer, Plaintiffs face the likelihood of repeated episodes of DHS releasing chemical munitions into their homes and bodies.

This case is the only means for Plaintiffs to stop the ongoing, grievous harms DHS's conduct causes them. The panel, in deriding Plaintiffs' injuries as a "NIMBY" grievance about "unpleasant" smells and gas, asserted that such "neighborhood grievances" are "the province of localities and tort law." Panel Op. 10. But localities generally cannot restrict federal law-enforcement activities. *See Hancock v. Train*, 426 U.S. 167, 178–79 (1976). And tort damages, even when available, provide only compensation years after the fact; they do not stop DHS's next chemical deployment into a child's bedroom.

Without en banc review now, Plaintiffs will spend the entire appeal exposed to serious—and, for some, potentially life-threatening—injury in their homes. Assuming the same panel has been assigned the merits of this appeal, that harm would not be balanced against any benefit of further percolation, given the panel's categorical holdings.

## CONCLUSION

The Court should grant panel reconsideration or reconsideration en banc.

Respectfully Submitted,

/s/ Stephen K. Wirth

Daniel F. Jacobson
Lynn D. Eisenberg
Stephen K. Wirth
Brian C. Rosen-Shaud
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave., NW, Suite 301
Washington, DC 20016
(301) 615-2336
dan@jacobsonlawyersgroup.com

Brian D. Netter
Jeffrey B. Dubner
Anna L. Deffebach
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

Katie Schwartzmann
PROTECT DEMOCRACY
201 St. Charles Ave., Suite 114
New Orleans, La 70170

Darin M. Sands
Colin Hunter
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

22

Taylor Jaszewski
BRADLEY BERNSTEIN SANDS LLP
1212 Broadway, Suite 1100
Oakland, CA 94612

*Counsel for Plaintiffs-Appellees*

May 11, 2026

23

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 26-1575

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** | 4,197 | .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Stephen K. Wirth | **Date** | May 11, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*