No. 26-1575

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

REACH COMMUNITY DEVELOPMENT, et al.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Oregon

**APPELLANTS' REPLY BRIEF**

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
AUGUST FLENTJE
BRENNA H. SCULLY
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 880-6114*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

INTRODUCTION AND SUMMARY ........................................................................ 1

ARGUMENT.................................................................................................................... 3

I.  Plaintiffs Are Not Likely To Succeed On The Merits................................... 3

  A.  Plaintiffs Lack Standing To Seek Prospective Relief. ................................. 3

  B.  Plaintiffs Do Not Show A Cognizable Deprivation Under The Fifth
    Amendment.................................................................................................... 4

  C.  Plaintiffs Do Not Establish A New Fundamental Right............................ 6

  D.  Plaintiffs Do Not Show Government Conduct That Shocks The
    Conscience..................................................................................................... 13

  E.  Plaintiffs Must Show That The Challenged Government Action Both
    Implicates A Fundamental Right And Shocks The Conscience.............. 17

II.  The Injunction Is Unworkable. ..................................................................... 23

III.  The Remaining Factors Decisively Favor The Government. ................................. 26

CONCLUSION .............................................................................................................. 28

CERTIFICATE OF COMPLIANCE ........................................................................ 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Felix*,
605 U.S. 73 (2025) .................................................................................... 16

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2006) ............................................................... 18-19

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015) .............................................................. 23

*Chicago Headline Club v. Noem*,
168 F.4th 1033 (7th Cir. 2026) (per curiam) ........................................ 26

*Christensen v. County of Boone*,
483 F.3d 454 (7th Cir. 2007) (per curiam) ........................................... 19

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .................................................................................. 3-4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................... 3

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ................................................. 2, 14, 15, 17, 18, 20, 23

*Davidson v. Cannon*,
474 U.S. 344 (1986) .................................................................................... 4

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ....................................................................... 11, 12, 19

*Estate of Soakai v. Abdelaziz*,
137 F.4th 969 (9th Cir. 2025) ............................................................... 5-6, 22

*Guertin v. Michigan*,
912 F.3d 907 (6th Cir. 2019) ...................................................................... 7

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) .................................................................. 21

*Hawkins v. Freeman*,
  195 F.3d 732 (4th Cir. 1999) (en banc) ............................... 19

*Hoefling v. City of Miami*,
  811 F.3d 1271 (11th Cir. 2016) ....................................... 19

*Lemire v. California Dep't of Corr. & Rehab.*,
  726 F.3d 1062 (9th Cir. 2013) ........................................ 22

*Los Angeles Press Club v. Noem*,
  171 F.4th 1179 (9th Cir. 2026) ....................................... 24

*Martinez v. City of Clovis*,
  943 F.3d 1260 (9th Cir. 2019) ......................................... 5

*Martinez v. City of Oxnard*,
  337 F.3d 1091 (9th Cir. 2003) (per curiam) .......................... 22

*Michigan Dep't of State Police v. Sitz*,
  496 U.S. 444 (1990) ............................................... 24-25

*Mirabelli v. Bonta*,
  146 S. Ct. 797 (2026) (per curiam) ................................ 11-12

*Newsom v. Trump*,
  141 F.4th 1032 (9th Cir. 2025) (per curiam) ......................... 27

*Nicholson v. City of Los Angeles*,
  935 F.3d 685 (9th Cir. 2019) ........................................ 22

*Nunez v. City of Los Angeles*,
  147 F.3d 867 (9th Cir. 1998) ........................................ 22

*Obergefell v. Hodges*,
  576 U.S. 644 (2015) .............................................. 11, 12

*Ochoa v. City of Mesa*,
  26 F.4th 1050 (9th Cir. 2022) ....................................... 15

*O'Bannon v. Town Ct. Nursing Ctr.*,
  447 U.S. 773 (1980) ................................................. 4, 5

*O'Connor v. Pierson*,
  426 F.3d 187 (2d Cir. 2005) ......................................... 19

*P.B. v. Koch*,

96 F.3d 1298 (9th Cir. 1996) ............................................................ 11, 22

*Pagán v. Calderón*,
448 F.3d 16 (1st Cir. 2006) .............................................................. 18-19

*Patel v. Kent Sch. Dist.*,
648 F.3d 965 (9th Cir. 2011) ........................................................... 16, 17

*Pauluk v. Savage*,
836 F.3d 1117 (9th Cir. 2016) .............................................................. 5

*Plumeau v. School Dist. #40 Cnty. of Yamhill*,
130 F.3d 432 (9th Cir. 1997) ............................................................... 22

*Polcano v. Diaz*,
76 F.4th 918 (9th Cir. 2023) ................................................................. 5

*Porter v. Osborn*,
546 F.3d 1131 (9th Cir. 2008) ......................................................... 13, 14

*Puente v. City of Phoenix*,
123 F.4th 1035 (9th Cir. 2024) .................................................... 13, 14, 15

*Raich v. Gonzales*,
500 F.3d 850 (9th Cir. 2007) ............................................................ 9, 10

*Regino v. Staley*,
133 F.4th 951 (9th Cir. 2025) ............................................................ 8, 21

*Reno v. Flores*,
507 U.S. 292 (1993) ........................................................................ 9-10

*Resnick v. Hayes*,
213 F.3d 443 (9th Cir. 2000) ............................................................ 21-22

*Sandin v. Conner*,
515 U.S. 472 (1995) ........................................................................... 11

*Steele v. Cicchi*,
855 F.3d 494 (3d Cir. 2017) ................................................................. 19

*Stormans, Inc. v. Wiesman*,
794 F.3d 1064 (9th Cir. 2015) ................................................................ 8

*Terrell v. Larson*,
396 F.3d 975 (8th Cir. 2005) (en banc) ................................................... 19

*Tincher v. Noem,*
  164 F.4th 1097 (8th Cir. 2026) (per curiam) ............................................................. 26-27

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ........................................................................................................... 26

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ........................................................................................................... 26

*Vazquez v. County of Kern,*
  949 F.3d 1153 (9th Cir. 2020) ...................................................................................... 22

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ................................................................................... 8, 9-10, 11, 19

*Washington v. Housing Auth. of the City of Columbia,*
  58 F.4th 170 (4th Cir. 2023) ........................................................................................... 7

*Whitley v. Albers,*
  475 U.S. 312 (1986) ............................................................................................................ 1

## INTRODUCTION AND SUMMARY

After the government filed its opening brief, a panel of this Court stayed the preliminary injunction pending appeal because the government "made a strong showing that it is likely to succeed on the merits and has met the remaining stay factors." Op. 5-6.[1] The Stay Panel correctly stayed the injunction, and the Court should now vacate the injunction in full.

As a threshold matter, plaintiffs lack Article III standing to seek prospective relief. Plaintiffs rely on allegations of past harm and speculation that (at some unspecified point in the future) chemical irritants will be used again near the U.S. Immigration and Customs Enforcement (ICE) facility in Portland, Oregon and prevailing environmental conditions will cause aerosolized chemicals to waft in such a way that injures plaintiffs.

On the merits, as the Stay Panel held, "it is amply clear that Plaintiffs will not prevail in the end on their substantive-due-process claim." Op. 17. That is so for a host of reasons. First, the Fifth Amendment does not protect those "who may be incidentally affected by" government action taken against third parties using well-established crowd-control measures. Op. 9. Second, plaintiffs' proposed fundamental right to be free from nonconsensual exposure to wafting aerosolized chemical irritants used to disperse third-party protestors "has no basis in our nation's

---

[1] "Op." citations refer to the Court's opinion published on April 27, 2026, Dkt. No. 37.

history or tradition" and, therefore, "does not appear to exist." *Id.* Third, plaintiffs do not show that the use of chemical irritants to disperse protests—a common law-enforcement technique, *id.*—shocks the conscience merely because the wind may carry the aerosolized chemical irritants in such a way that impacts people downwind. Accordingly, even under plaintiffs' (incorrect) disjunctive theory of substantive-due-process claims challenging executive action—that plaintiffs need to show that the use of chemical irritants either implicates a fundamental right *or* shocks the conscience—plaintiffs are unlikely to succeed on the merits because they have failed to establish either element. And that disjunctive theory is wrong, as the Supreme Court made clear in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998): to state a substantive due process claim, plaintiffs must establish that the challenged executive action both (1) implicates a fundamental right and (2) shocks the conscience. *Id.* at 847 n.8.

As to the scope of relief, the Stay Panel correctly held that "[t]he preliminary injunction is so broad and vague in scope as to be unworkable." Op. 12. For their part, plaintiffs fail to clarify the injunction's vague terms; fail to show that federal officers do not need these law-enforcement tools to protect officers, public safety, and federal property; and fail to overcome the injunction's violation of separation-of-powers principles.

Lastly, the Stay Panel correctly held that that injunction "unquestionably" irreparably harms the government and undermines the public interest because it "prohibits officers from using common tools of crowd dispersal that would facilitate

the protection of federal personnel and property and prevent the escalation of violence." Op. 12. Plaintiffs lean heavily on their alleged injuries, Resp. Br. 63-70, but none shows that their alleged speculative future harms outweigh the irreparable injury to the government and the public interest.

## ARGUMENT

### I. Plaintiffs Are Not Likely To Succeed On The Merits.

#### A. Plaintiffs Lack Standing To Seek Prospective Relief.

At the outset, the injunction is improper because plaintiffs cannot carry their burden to show that they have standing to seek sweeping prospective relief based on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Here, plaintiffs' theory of standing piles speculation upon speculation: protests will occur again at the ICE facility, federal officers will respond to those protests with chemical irritants, prevailing environmental conditions will cause aerosolized chemical irritants to waft into Gray's Landing, and the chemical irritants that waft into Gray's Landing will be present in sufficient quantities to cause plaintiffs harm. Because every link in that chain is uncertain, plaintiffs cannot prove a certainly impending risk of injury.

Plaintiffs argue that they have standing based on an alleged "ongoing, sustained pattern of releasing chemical munitions immediately adjacent to" Gray's Landing. Resp. Br. 33 (quotation marks omitted). As we explained, Opening Br. 16, the Supreme Court rejected a similar theory of standing for prospective relief in *City of Los*

3

*Angeles v. Lyons*, 461 U.S. 95 (1983).  Under *Lyons*, the plaintiff's past injury and allegations that the government "routinely" engaged in the challenged conduct did not establish standing because there was no "immediate threat" that he would be subjected to the challenged conduct in the future.  *Id.* at 105.  Plaintiffs attempt to distinguish *Lyons*, claiming that their future injuries are not speculative because they "reside at a fixed location next to the ICE facility."  Resp. Br. 34-35.  But that does not overcome the remaining speculative links in the causal chain.

### B. Plaintiffs Do Not Show A Cognizable Deprivation Under The Fifth Amendment.

Plaintiffs' Fifth Amendment claim is likely to fail because, as the Stay Panel explained, it proposes "an unwritten constitutional right . . . that is possessed not by the direct targets of the government action (such as the crowds) but by the neighboring residents who may be incidentally affected by that action."  Op. 9.  The inherent problem with plaintiffs' substantive-due-process theory is that the Fifth Amendment "does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980); *see also* Opening Br. 17-19.

Plaintiffs, like the district court, wrongly disregard *Town Court Nursing Center* as a procedural due process case.  ER-037-38; Resp. Br. 48.  Both substantive and procedural due process require deprivation of a liberty interest.  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  And *Town Court Nursing Center* instructs—and the Stay Panel recognized, Op. 9-10—that such a deprivation does not occur when a plaintiff is

incidentally affected by governmental action taken against a third party, 447 U.S. at 788-89.

Plaintiffs also fail to distinguish *Town Court Nursing Center*. Resp. Br. 48-49. The crux of plaintiffs' Fifth Amendment claim is that the government used chemical irritants despite the alleged harm to plaintiffs. But that was the same argument raised by the *Town Court Nursing Center* plaintiffs: the government decertified the nursing home despite the harm to the plaintiffs.[2]

Plaintiffs' reliance on *Estate of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025), is unavailing. Resp. Br. 49-50. *Estate of Soakai* recognized a substantive-due-process claim in "highly unusual circumstances" where innocent bystanders were injured because police officers allegedly initiated a car "chase for the purpose of harming the fleeing suspect" "unrelated to any legitimate law enforcement purpose." 137 F.4th at

---

[2] In response to *Town Court Nursing Center*, and throughout their brief, plaintiffs rely on several cases that raised state-created-danger claims. Resp. Br. 41, 44, 49 (first citing *Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016); and then citing *Polcano v. Diaz*, 76 F.4th 918 (9th Cir. 2023)). Those cases are inapt. Under the state-created-danger doctrine, plaintiffs may challenge the government's failure to protect them from a "particularized danger" that the government "affirmatively created." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (quotation marks omitted). Here, plaintiffs have not asserted a state-created-danger claim or alleged that the U.S. Department of Homeland Security (DHS) failed to protect them from danger. Instead, plaintiffs allege that DHS itself, by using chemical irritants, inflicted the alleged harm. And plaintiffs seek an injunction to stop DHS's allegedly harmful conduct, not to compel DHS to provide them with protection from danger.

975. *But see id.* at 988-89 (Bumatay, J., dissenting) ("[N]either the Supreme Court nor the Ninth Circuit has ever endorsed" this approach to due process, and "there's no basis [for it] under the Constitution."). Plaintiffs contend that *Estate of Soakai* should be expanded to situations where officers do not act with a purpose to harm, but nonetheless their conduct causes injury to bystanders. *Estate of Soakai* does not stand for that proposition. Instead, *Estate of Soakai* held, based on "the unique aspects of th[e] case," *id.* at 985 (majority opinion), that injuries to bystanders shock the conscience when they are caused by officers' conduct undertaken with a purpose to harm another, *id.* at 975. Because *Estate of Soakai* concerned "highly unusual circumstances" not present in this case, *id.* at 975, and here the district court did not find that DHS acted with a purpose to harm third-party protestors, ER-042-43, *Estate of Soakai* does not support plaintiffs' substantive-due-process claim.

### C. Plaintiffs Do Not Establish A New Fundamental Right.

**1.** As the Stay Panel recognized, "[t]he supposed constitutional right at issue," a right of bodily integrity free from nonconsensual exposure to wafting airborne chemical irritants dispersed against third-party protestors, "has no basis in our nation's history or tradition." Op. 9. Plaintiffs and the district court "have not pointed to any historical prohibition—much less a 'deeply rooted' one"—against the use of chemical irritants. *Id.*; *see also* Opening Br. 19-23. In fact, both the district court and this Court acknowledged that no court "has recognized the Plaintiffs'

claimed right."[3] Op. 9; *see also* ER-034 (admitting that the right "has not been found" before). Nor did plaintiffs or the district court point "to 'any scholarly treatise' that would support such a right." Op. 9. The Stay Panel correctly concluded that "[o]ur founding document does not address neighborhood grievances concerning unwanted smells and gas—no matter how unpleasant those may be." Op. 10. "Simply put, [the right] does not appear to exist." Op. 9.

Nor can plaintiffs "simply pluck a 'right' as general and abstract as 'bodily integrity' from the caselaw, and then carefully describe that right on [their] own terms without regard to whether that right is in fact grounded in history." Op. 11. The Stay Panel correctly determined that "analogi[es] to various cases in which courts have found substantive-due-process rights to 'bodily integrity' in certain specific contexts" are insufficient because "none of those cases address the specific right at issue here" and none show that the proposed right "is deeply rooted in our nation's history and tradition."[4] Op. 10.

---

[3] Plaintiffs contend that cases rejecting similar purported fundamental rights related to water and air contamination are irrelevant. Resp. Br. 47-48. But each of those cases explicitly said that there is no such constitutional right, showing at the very least that their proposed right is not deeply rooted in history and tradition. Opening Br. 22-24.

[4] Plaintiffs' reliance on *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019) and *Washington v. Housing Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), Resp. Br. 44-45, does not move the needle because *Guertin* and *Washington* made the same analytical mistakes as plaintiffs. *Guertin* analogized to cases recognizing fundamental rights in different contexts. 912 F.3d at 920-21. And *Washington* solely relied on the abstract concept of bodily integrity. 58 F.4th at 182.

**2.** Plaintiffs argue that the right of bodily integrity is an established fundamental right that applies in a variety of circumstances, and, therefore, they are not required to carefully define their proposed right or show that such a right is deeply rooted in the Nation's history and tradition. Resp. Br. 42-46. Put differently, plaintiffs assert that *Washington v. Glucksberg*, 521 U.S. 702 (1997), does not apply. That proposition is baseless.

In fact, this Court rejected the exact arguments plaintiffs make here in *Regino v. Staley*, 133 F.4th 951 (9th Cir. 2025). There, the plaintiffs similarly argued "that the 'careful description' requirement applies only to determine the existence of a new fundamental right, and not to analyze whether an asserted right is encompassed within a fundamental right that has been previously recognized." *Id.* at 963 n.7. This Court disagreed. The Court recognized that "[t]he Supreme Court has not embraced this limitation." *Id.* And the Court explained that "[r]egardless of whether a right has been previously recognized in judicial precedent, the critical question is whether the asserted right is 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). And "[to] formulate the asserted fundamental right," the Court "must consult 'both the scope of the challenged [government action] and the nature of [the plaintiff's] allegations.'" *Id.* at 964 (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015)).

On this point, *Reno v. Flores*, 507 U.S. 292 (1993), is instructive. There, the plaintiffs were a class of detained juvenile aliens who could be released only to certain

8

nondetained family members or, in the government's discretion, "to other adults who execute a care and attendance agreement." *Id.* at 297. Plaintiffs raised a substantive-due-process claim, arguing that the government's refusal to release them to the latter category of adults violated the fundamental right of "freedom from physical restraint," *id.* at 302 (quotation marks omitted), which "has always been at the core of the liberty protected by the Due Process Clause," *id.* at 315 (O'Connor, J., concurring) (quotation marks omitted). The Supreme Court rejected the proposed right because it was "not at issue in th[e] case" and was far too sweeping based on the plaintiffs' allegations and the challenged government action. *Id.* at 302 (majority opinion). Instead, the Supreme Court carefully defined the proposed fundamental right as "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Id.* And that carefully defined right, the Supreme Court held, was not "so rooted in the traditions and conscience of our people as to be ranked as fundamental" because the Court was "unaware . . . that any court—aside from the courts below—has ever held that a child has [such] a constitutional right." *Id.* at 303 (quotation marks omitted).

Similarly, in *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007), the Court rejected a proposed "fundamental right to 'mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and

9

preserve her life.'" *Id.* at 864 (alteration in original). The Court recognized that the proposed right "comprises several fundamental rights that have been recognized at least in part by the Supreme Court." *Id.* But the Court nevertheless conducted the *Glucksberg* analysis. The Court determined that the proposed right did "not narrowly and accurately reflect the right that [the plaintiff] seeks to vindicate" because "[c]onspicuously missing from [the plaintiff's] asserted fundamental right is its centerpiece: that she seeks the right to use *marijuana* to preserve bodily integrity, avoid pain, and preserve her life." *Id.* The Court then proceeded to determine whether the carefully defined right—"to make a life-shaping decision on a physician's advice to use medical marijuana"—was deeply rooted in history and tradition by analyzing "[t]he history of medical marijuana use in this country." *Id.* at 864-65. Concluding that the proposed right was not so deeply rooted, the Court rejected the substantive-due-process claim. *Id.* at 869.

The cases cited by plaintiffs only confirm that, consistent with *Glucksberg*, they are required to show a historical tradition protecting the carefully defined right, not merely a historical tradition protecting the abstract concept of bodily integrity. Resp. Br. 43-44. Several of those cases involved carefully defined rights to be free from various types of nonconsensual medical procedures, all of which were grounded in "the common-law rule that forced medication was a battery, and the long legal

10

tradition protecting the decision to refuse unwanted medical treatment."[5] *Glucksberg*, 521 U.S. at 725. Other cases involved carefully defined rights to be free from different forms of physical and sexual abuse by various public officials, all of which were deeply rooted in history and tradition because "the Due Process Clause historically encompassed the notion that the state could not 'physically punish an individual except in accordance with due process of law.'" *P.B. v. Koch*, 96 F.3d 1298, 1302 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). So while plaintiffs may be correct that they are not required to identify "historical authority addressing . . . the same weapon, contaminant, conduct, or delivery method," Resp. Br. 45 (citation omitted), they are nonetheless required to provide "a careful analysis of the history of the right at issue," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 238 (2022). And they have categorically failed to do so. *See* Op. 9 ("Plaintiffs have not pointed to any historical prohibition—much less a 'deeply rooted' one—against the use of non-lethal crowd-control devices by law enforcement.").

Lastly, plaintiffs invoke *Obergefell v. Hodges*, 576 U.S. 644 (2015), and *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026) (per curiam), to argue that *Glucksberg* does not apply to

---

[5] Plaintiffs claim that the government "narrow[ed] bodily integrity to the 'fundamental right [to be] free from nonconsensual medical procedures and treatment.'" Resp. Br. 44 (second alteration in original). That is incorrect. Our point is that plaintiffs cannot establish a new fundamental right to be free from nonconsensual exposure to wafting airborne contaminants used to disperse third-party protestors by analogizing to cases recognizing a fundamental right to be free from nonconsensual medical procedures and treatment. Opening Br. 23-24.

11

established fundamental rights. Resp. Br. 46. But neither case stands for that proposition. *Obergefell* explained that *Glucksberg*'s careful description requirement does not require courts to define a proposed fundamental right to marriage based on the specific traits of the individuals; instead, courts focus on "the right to marry in its comprehensive sense." 576 U.S. at 671. *Obergefell* said nothing about how *Glucksberg* applies to other types of proposed fundamental rights. And *Mirabelli* made clear that the carefully defined right—the right of parents "not to be shut out of participation in decisions regarding their children's mental health"—was deeply rooted in history and tradition, as determined by prior precedent, and then explained that by concealing information about a child's gender dysphoria, a condition "bearing on a child's mental health," schools "likely violate parents' rights." 145 S. Ct. at 803. *Mirabelli* is wholly consistent with *Glucksberg*. *See id.* at 804 (Barrett, J., concurring) (explaining that the Court's substantive-due-process analysis satisfied *Glucksberg*). In any event, the Supreme Court's most recent substantive-due-process merits decision, *Dobbs*, made clear that *Glucksberg* is the established test for fundamental rights. 597 U.S. at 231, 237-40.

In sum, there is no authority for plaintiffs' claim that they can avoid *Glucksberg* by merely evoking the abstract concept of bodily integrity.

### D. Plaintiffs Do Not Show Government Conduct That Shocks The Conscience.

Plaintiffs fail to show government conduct that shocks the conscience as measured by the correct legal standard or even by plaintiffs' own preferred standard.

**1.** As an initial matter, plaintiffs insist that a "deliberate indifference" standard applies to determine whether the incidental effects on plaintiffs from officers' use of chemical irritants to disperse protests shock the conscience. Resp. Br. 50-54. As we explained, the correct question is whether officers acted with a purpose to harm plaintiffs unrelated to legitimate law-enforcement objectives. Opening Br. 28-31.

The purpose-to-harm standard applies when circumstances "present[] competing public safety obligations," *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008), even "[t]hough a police officer may *literally* have time to deliberate," *Puente v. City of Phoenix*, 123 F.4th 1035, 1055 (9th Cir. 2024) (quotation marks omitted). That is true here: officers deployed chemical irritants in dynamic situations involving violent, disruptive, or unlawful protests, which required them to balance competing safety interests. ER-042-43.

Plaintiffs and the district court misconstrue the purpose-to-harm standard by focusing solely on whether DHS officials had enough time to deliberate about the use of chemical irritants over an eight-month period. ER-043; Resp. Br. 50-53. That position ignores the Supreme Court's and this Court's caselaw holding that the

13

purpose-to-harm standard applies to situations where the government must balance competing safety interests, regardless of whether the government literally had time to deliberate. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *County of Sacramento v. Lewis*, 523 U.S. 833, 851-54 (1998); *Porter*, 546 F.3d at 1137-40; *Puente*, 123 F.4th at 1055. Plaintiffs attempt to distinguish *Whitley* and *Puente* by claiming that those cases involved one-time uses of force, whereas this case involves repeated uses of chemical irritants. Resp. Br. 53-54. That factual difference is irrelevant. As the Supreme Court explained in *Lewis*, in situations "uncomplicated by the pulls of competing obligations" where the government has "the chance for repeated reflection," the government's deliberate indifference may shock the conscience. 523 U.S. at 853. But in cases like this, involving situations that are complicated by competing obligations, the deliberate indifference standard is inappropriate, regardless of whether plaintiffs challenge a single use of chemical irritants or multiple uses.

Plaintiffs argue that because DHS was "notified of the harm" that chemical irritants would cause them and "chose to use" chemical irritants anyway, DHS was deliberately indifferent and, therefore, shocked the conscience. Resp. Br. 54-55 (quotation marks omitted). But that illustrates why deliberate indifference is the wrong measure of conscience-shocking conduct in this case. The government must balance potential harms and benefits when making lots of decisions—including, in the law-enforcement context and elsewhere, choices that protect some people while putting others at risk. Doing so does not shock the conscience. As the Supreme

14

Court explained in *Lewis*, "[a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range." 523 U.S. at 853. The officer's decision to give chase, thereby protecting some people and putting others at risk, does not shock the conscience. *Id.* So too here. DHS's decision to use chemical irritants (a common law-enforcement tool that this Court has held constitutional, *Puente*, 123 F.4th at 1062-63) in response to protests at a federal detention facility reflects similar balancing of safety risks— those from not dispersing the protests and those from using chemical irritants—and, therefore, does not shock the conscience. That balancing shows why the deliberate-indifference standard is the wrong measure of conscience-shocking conduct and why the Court should apply the purpose-to-harm standard.

2.      Under the purpose-to-harm standard, plaintiffs must show that the government "acted with a purpose to harm the plaintiff for reasons unrelated to legitimate law enforcement objectives." *Puente*, 123 F.4th at 1055 (citation modified). Legitimate law enforcement objectives include crowd dispersal, self-protection, and protection of others. *See id.* at 1056; *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). The record plainly shows that DHS did not act with a purpose to harm plaintiffs because chemical irritants were deployed for a legitimate law-enforcement objective: to disperse protests near the ICE facility and to protect the public, federal employees, federal officers, and federal property. ER-014-27; ER-042-50.

Confirming as much, plaintiffs do not argue that DHS acted with a purpose to harm. Resp. Br. 50-63.

**3.** Even if plaintiffs were correct that liability could be demonstrated by showing that officers acted with deliberate indifference, that standard would not be satisfied here. According to plaintiffs, DHS was deliberately indifferent because not every use of chemical irritants was necessary. Resp. Br. 55-61. Of course, plaintiffs' opinion is irrelevant as to whether law-enforcement conduct was appropriate. *Barnes v. Felix*, 605 U.S. 73, 80 (2025) ("[D]eciding whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer."). And the district court explicitly refrained from making any findings as to whether the use of chemical irritants was unnecessary to disperse protests or violated the rights of protestors because, as the court explained, "this case does not challenge the appropriate use of force in the immediate vicinity of the Portland ICE Facility when officers faced . . . threats to themselves, their building, or their mission." ER-043.

Regardless, an unnecessary use of chemical irritants would not show that DHS acted with deliberate indifference toward plaintiffs. "[D]eliberate indifference requires a culpable mental state": the government "must recognize an unreasonable risk and actually intend to expose the plaintiff[s] to such risks without regard to the consequences to the plaintiff[s]." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citation modified). Thus, a mistaken belief that force was necessary would not

show that the government "actually intend[ed] to expose the plaintiff[s]" to unreasonable risk. *Id.* (quotation marks omitted).

### E. Plaintiffs Must Show That The Challenged Government Action Both Implicates A Fundamental Right And Shocks The Conscience.

For the first time in their response brief, plaintiffs argue that there are two independent ways to establish a substantive-due-process claim challenging executive action: (1) action that implicates a fundamental right, or (2) action that shocks the conscience. Resp. Br. 36-42. Before the district court, plaintiffs neither expressly raised this theory, Dkt. 46 at 27, nor contested the government's argument that plaintiffs are required to establish both elements, Dkt. 55 at 15-18, 23-29; Dkt. No. 57 at 15-16. And in their opposition to the government's stay motion, plaintiffs argued that they were likely to establish the "elements" of their substantive due process claims, which are a fundamental right and conscience-shocking conduct. Stay Opp'n at 22.

As just explained, plaintiffs do not satisfy either, so the Court need not address plaintiffs' disjunctive theory of substantive due process. Regardless, plaintiffs' theory is incorrect. To establish a substantive-due-process claim challenging executive action, plaintiffs must show that the challenged action *both* implicates a fundamental right *and* shocks the conscience.

**1.** Plaintiffs' disjunctive theory of substantive-due-process claims challenging executive action is foreclosed by the Supreme Court's decision in *Lewis.*

17

*Lewis* held that "a case challenging executive action on substantive due process grounds" "presents an issue antecedent" to the issue raised in *Glucksberg*, "the need for historical examples of enforcing a liberty interest of the sort claimed." 523 U.S. at 847 n.8. That "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* "Only if the necessary condition of egregious behavior were satisfied would there be a possibility of recognizing a substantive due process right to be free of such executive action, and only then might there be a debate about the sufficiency of historical examples of enforcement of the right claimed . . . ." *Id.* Thus, "[i]n an executive action case," the issue raised in *Glucksberg* "about the need for historical examples of recognition of the claimed liberty protection at some appropriate level of specificity" does not "arise if the conduct does not reach the degree of the egregious." *Id.* Put shortly, *Lewis* held that, to state a substantive-due-process claim challenging executive action, the plaintiff must show both conduct that shocks the conscience, as defined in *Lewis*, and a fundamental right deeply rooted in the Nation's history and tradition, as defined in *Glucksberg*.

Confirming as much, this Court has applied *Lewis*'s two-element test for substantive-due-process claims challenging executive action.[6] In *Brittain v. Hansen*, 451

---

[6] Numerous other courts of appeals also require plaintiffs to show both a fundamental right and conscience-shocking conduct to state a substantive-due-process claim challenging executive action. *See, e.g., Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir.

Continued on next page.

F.3d 982 (9th Cir. 2006), this Court held that "[i]t is not enough to allege conscience shocking action" to establish a substantive-due-process claim challenging executive action. *Id.* at 991. Instead, "to establish a constitutional violation based on substantive due process, [the plaintiff] must show both a deprivation of her liberty and conscience shocking behavior by the government."[7] *Id.*

Requiring plaintiffs to show that the challenged action implicates a fundamental right (not just that it shocks the conscience) is the central tenet of substantive due process. Substantive due process derives from the term "liberty" and protects "a select list of fundamental rights that are not mentioned anywhere in the Constitution." *Dobbs*, 597 U.S at 237, 239. Because "the term 'liberty' alone provides little guidance" and "is a capacious term," courts "must guard against the natural human tendency to confuse what that Amendment protects with [their] own ardent views about the liberty that Americans should enjoy." *Id.* at 239-40. The safeguard against such "freewheeling judicial policymaking" *id.* at 240, is the *Glucksberg* inquiry, which requires that the proposed "fundamental right must be 'objectively, deeply rooted in this Nation's history and tradition,'" *id.* at 239 (quoting *Glucksberg*, 521 U.S. at 720-21).

---

2006); *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6, 203 (2d Cir. 2005); *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017); *Hawkins v. Freeman*, 195 F.3d 732, 738, 747 n.9 (4th Cir. 1999) (en banc); *Christensen v. County of Boone*, 483 F.3d 454, 462 (7th Cir. 2007) (per curiam); *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc); *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016).

[7] The district court correctly applied *Lewis* and *Brittain* and required plaintiffs to show both a fundamental right and conscience-shocking conduct. ER-032; ER-040.

Thus, it would be incongruous to recognize a substantive due process claim untethered to a fundamental right that satisfies *Glucksberg*.

**2.** Plaintiffs take a different, and incorrect, view of *Lewis*. In their telling, *Lewis* held that: (1) different tests apply to substantive-due-process claims challenging executive action and legislative enactments, and (2) an executive-action challenge requires only that the conduct shocks the conscience. Resp. Br. 37-38. That proposition finds no support in *Lewis*, which made clear that a plaintiff must establish both "the threshold question" of whether the executive action shocks the conscience and provide "historical examples of enforcing a liberty interest of the sort claimed" to show "a substantive due process right to be free of such executive action." 523 U.S. at 847 n.8. And, contrary to plaintiffs' assertion (RB 38-39), the Supreme Court explicitly stated that Justice Scalia's concurrence, which faulted the Court for not analyzing whether the challenged conduct implicated a fundamental right under *Glucksberg*, is "simply mistaken in seeing our insistence on the shocks-the-conscience standard as an atavistic return to a scheme of due process analysis rejected by the Court in [*Glucksberg*]." *Lewis*, 523 U.S. at 847 n.8. Instead, the Court clarified its holding that both elements—government conduct that implicates a fundamental right and shocks the conscience—are required to state a substantive-due-process challenge to executive action. *Id.* Because the Court held that the challenged conduct did not shock the conscience, it had no reason to analyze the second element, whether the conduct implicated a fundamental right. *Id.* at 854-55.

20

Plaintiffs' disjunctive theory is also self-defeating. Oddly, plaintiffs argue that while they "did not need to meet the *Glucksberg* test," they nonetheless "needed to identify, as a threshold to the shocks-the-conscience inquiry, . . . a cognizable life, liberty, or property interest." Resp. Br. 41. But plaintiffs provide no authority—much less any rationale—supporting the novel concept that substantive due process protects non-fundamental liberty interests. And then plaintiffs' purported cognizable (but non-fundamental) liberty interest is bodily integrity, the same concept they claim is an established fundamental right. Resp. Br. 42.

Plaintiffs assert that several decisions by this Court describe the elements as disjunctive. Resp. Br. 36-37. Any such statements would contradict *Lewis*'s clear holding that plaintiffs must establish both elements. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it."). In any event, plaintiffs' cited cases do not involve a substantive-due-process claim challenging executive action based solely on government conduct that shocked the conscience. *Contra* Resp. Br. 37, 39, 41-42. *Regino* involved a substantive-due-process challenge to a school district policy, not an executive action. 133 F.4th at 956, 959-60. In several cases, the plaintiffs failed to allege a fundamental right, and the Court rejected the substantive-due-process claims without analyzing whether the challenged conduct shocked the conscience. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) ("Plaintiff has failed to establish a liberty interest protected by the

21

Constitution."); *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998) ("[Plaintiffs] have asserted no cognizable property or liberty interest."). In others, there was no dispute as to whether the plaintiffs alleged a fundamental right, and the Court focused on the conscience-shocking element. *See Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (per curiam) (alleged coercive police interrogation); *Estate of Soakai*, 137 F.4th at 976 n.2 (alleged loss of life, familial relationship, and physical assault); *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (alleged loss of familial relationship); *Vazquez v. County of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020) (alleged sexual abuse); *Plumeau v. School Dist. #40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (alleged physical abuse); *P.B.*, 96 F.3d at 1304 (alleged physical assault); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019) (alleged physical assault).

Finally, plaintiffs argue that the disjunctive approach to substantive-due-process challenges to executive action is necessary to avoid a "divergence" from substantive-due-process challenges to legislative enactments. Resp. Br. 39-40. Plaintiffs point out that where a legislative enactment does not implicate a fundamental right, it is still subject to rational-basis review. So, plaintiffs claim, analogously, where executive action does not implicate a fundamental right, it should be subject to the shocks-the-conscience test. Plaintiffs' argument cannot be reconciled with *Lewis*. This divergence is necessary because, as *Lewis* explained, "executive action challenges raise a particular need to preserve the constitutional

22

proportions of constitutional claims, lest the Constitution be demoted to what [the Court] ha[s] called a font of tort law." 523 U.S. at 847 n.8. As then-Judge Gorsuch explained, "*Lewis* indicated that its standard for executive conduct is intended to be even more demanding than the *Glucksberg* standard for legislative action." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 n.1 (10th Cir. 2015).

## II. The Injunction Is Unworkable.

**A.** Plaintiffs fail to clarify the injunction's hopelessly vague terms. Under the injunction, each officer must determine what amount of chemical irritants is "likely to reach Gray's Landing." ER-059. As the Stay Panel explained, "how much is too much; whether the gas is 'likely to reach' the complex; all this is guesswork, and where a gas cloud travels will depend much on the weather." Op. 12; *see also* Opening Br. 35-36 (explaining relevant environmental conditions and other factors officers must consider). Of course, the federal government has no power to control the wind, yet "[t]he district court's order appears to presume federal control over nature's elements." Op. 12-13. As the Stay Panel correctly held, "[s]uch uncertainty produced by the injunction—the violation of which would subject federal law enforcement officers to contempt—is intolerable." Op. 13.

Plaintiffs claim that because "DHS understands the precise impact ranges on the various types of munitions," officers can easily determine which chemical irritants will reach Gray's Landing and violate the injunction. Resp. Br. 70-71. As we explained, Opening Br. 36, that factual premise is wrong. The impact ranges for each

23

type of chemical irritant do not strictly dictate where the aerosolized chemicals will waft through the air. The range of these aerosolized chemicals—and, therefore, the injunctions' restrictions—depends on environmental factors, like wind speed, wind direction, air temperature, precipitation, and humidity, ER-061, ER-063-64, ER-083, as well as the total amount of chemical irritants dispersed by all officers on the scene. An officer's prior use of chemical irritants does not confer omniscience as to how chemical irritants will dissipate in future situations involving different environmental and operational conditions. *Contra* Resp. Br. 72.

Plaintiffs have no response to the additional uncertainty created by the contradictions between the injunction and DHS policy as to when federal officers may use chemical irritants. Opening Br. 36-37. Nor do plaintiffs rebut the significant concern that these vague restraints may result in officers being held in contempt for violating a vague court order in dangerous, dynamic situations, Opening Br. 37-38—a concern the Stay Panel highlighted as one reason for staying the injunction pending appeal. Op. 12-13; *see also Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1191-92 (9th Cir. 2026) (vacating injunction that "invites strategic or near-frivolous contempt proceedings against the government's responsible law enforcement agents").

**B.** Plaintiffs next claim that chemical irritants are not a necessary law-enforcement tool because Federal Protective Service (FPS) officers are not authorized to use one type of chemical irritant restricted by the injunction, tear gas, and do not use chemical irritants outside of the ICE facility driveway. Resp. Br. 72-73. But the

injunction does not apply to only FPS; it also restricts ICE and Customs and Border Protection officers, who are authorized to use tear gas, ER-013, and operate outside of the ICE facility driveway to prevent protestors from blocking the streets in front of the ICE facility, thereby obstructing access to the driveway and preventing federal officers and employees from entering and exiting the facility, *see, e.g.*, ER-088, ER-097, ER-099, ER-103, ER-107-09, ER-153, ER-159, ER-161.  And even as to FPS officers, the injunction restricts them from using authorized types of chemical irritants in the ICE facility driveway.

More importantly, prospective limitations on the types of defensive tools available to law-enforcement officers to protect a federal detention facility and the public, without consideration of the particular factual circumstances those officers face, improperly endanger officer and public safety.  That "no incident" occurred while the injunction was in effect, Resp. Br. 73, does not ameliorate that risk.  The injunction is unworkable because it prevents federal officers from using key law-enforcement tools, commonly used to control crowds for decades, Op. 9, even when objectively reasonable and necessary to protect officer and public safety, ensure access to the ICE facility, and protect federal property.

**C.**    Plaintiffs' separation-of-powers arguments, Resp. Br. 73-74, ignore the nature of this injunction, which "transfer[red] from politically accountable officials to the [district court] the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger,"

25

which categorically is not permitted by Article III, *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 453-54 (1990); *see also Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th Cir. 2026) (per curiam).  By threatening contempt for officers who may make reasonable but incorrect determinations about the meaning of the injunction's vague terms and by overseeing Executive Branch law-enforcement operations, the district court violates the separation-of-powers doctrine.  *Trump v. CASA, Inc.*, 606 U.S. 831, 858 (2025); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021).  "[T]he structural injunction imposed here, given its breadth and vagueness, is too big a step in [the] direction" of federal courts "exercise[ing] general oversight of the Executive Branch."  *Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026) (per curiam) (quoting *CASA*, 606 U.S. at 861)).  Plaintiffs simply do not engage with this point.

## III.    The Remaining Factors Decisively Favor The Government.

Plaintiffs fail to establish Article III standing for prospective relief or likelihood of success on their Fifth Amendment claims, much less irreparable harm.  Even under plaintiffs' theory, they will experience a constitutional violation only if a speculative chain of possibilities aligns.  Opening Br. 42.  And because any future harm is speculative, plaintiffs' focus on their alleged past injuries, Resp. Br. 63-69, does not show that they face irreparable harm absent an injunction.

By contrast, the government suffers irreparable injury every day that federal law-enforcement officers are improperly enjoined from using nonlethal crowd-control devices in response to protests near the Portland ICE facility.  *See CASA*, 606 U.S. at

26

859; *Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025) (per curiam); *Tincher*, 164 F.4th at 1100. The Stay Panel correctly determined that "the hindrance on the government's ability to enforce the laws and to protect its personnel constitutes irreparable harm"; as does "the risk of an escalation of violence attending the government's inability to use non-lethal crowd-control devices." Op. 15.

Ignoring that precedent, plaintiffs argue that the government "rests on speculation and abstract law-enforcement interests" without identifying an "incident in which the injunction prevented officers from protecting themselves, the facility, or the public." Resp. Br. 75. But the government is not required to demonstrate that it has already suffered actual irreparable harm to show that a preliminary injunction is improper. At any point, violent, disruptive, or unlawful protests could arise—beyond the government's power to control or predict—where the use of crowd-control devices would be appropriate. But because the injunction usurped the Executive Branch's law-enforcement authority, federal officers would be unable to deploy such devices to protect themselves, the public, and federal property without risking contempt. As the Stay Panel held, because "[t]he preliminary injunction prohibits officers from using common tools of crowd dispersal that would facilitate the protection of federal personnel and property and prevent the escalation of violence," it "unquestionably [imposes] . . . irreparable harm to the government and undermines the public interest." Op. 12.

27

The Stay Panel correctly concluded that the "incidental harms" alleged by plaintiffs "do not outweigh the government's irreparable harm and the public interest." Op. 17. The equities thus sharply favor the government.

## CONCLUSION

For these reasons and those explained in the government's opening brief, the district court's preliminary injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
AUGUST FLENTJE
/s/ *Brenna H. Scully*
BRENNA H. SCULLY
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 880-6114*
*Brenna.scully@usdoj.gov*

JUNE 2026

28

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 32-1(b) because it contains 6,907 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32-1(d) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Brenna H. Scully
Brenna H. Scully

29